517 A.2d 1296

Gladys CALDWELL, Appellant,

v.

CITY OF PHILADELPHIA.

Gladys CALDWELL

v.

CITY OF PHILADELPHIA, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 18, 1985.

Filed Oct. 3, 1986.

Reargument Denied Dec. 8, 1986.

408

Barbara Axelrod, Deputy City Solicitor, Philadelphia, for appellant in No. 924 and for appellee in No. 923.

Cary L. Sandler, Philadelphia, for appellant in No. 923 and for appellee in No. 924.

Before CAVANAUGH, WICKERSHAM and HOFFMAN, JJ.

CAVANAUGH, Judge:

The trial of this case resulted in a $175,000.00 verdict for the plaintiff, Gladys Caldwell (hereinafter, "Caldwell"). Caldwell alleged that the City, acting through its police officers, was liable on a theory which stemmed from the failure by the police to obtain the identity of a driver who struck her while crossing a street. Following the jury verdict, the City moved for judgment notwithstanding the verdict and for a new trial. The trial court denied the City's motion for judgment n.o.v. and granted its motion for a new trial. Both Caldwell and the City were dissatisfied with the lower court's decision and have appealed to this court. Caldwell appeals the grant of a new trial. The City's appeal argues that the trial court erred in denying its motion for judgment n.o.v. Following careful study of this matter, we vacate the award of a new trial, reverse the lower court's denial of judgment n.o.v. and enter judgment in favor of the City of Philadelphia.

We first examine the appeal from the denial of the City's claim of entitlement to judgment n.o.v. Our standard of review is clear. When reviewing whether a judgment n.o.v. should have been entered, we are bound to review all the evidence, together with all reasonable inferences, in the light most favorable to the verdict winner. *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981); *Fahringer v. Rinehimer*, 283 Pa.Super. 93, 423 A.2d 731 (1980). Viewed in this light, the evidence may be stated as follows:

On February 17, 1975 Gladys Caldwell and her friend, Charles Wiley, were struck by an automobile as they were walking across an intersection. Appellant was knocked to the ground and sustained various injuries. Wiley, who was not seriously injured, directed traffic to prevent any further injury to appellant who was lying in the street. Shortly after the accident, two police vehicles, a cruiser and a van, arrived at the scene. The two officers in the van and the sergeant who arrived in the cruiser placed appellant on a stretcher and began to lift her into the van. As they were

placing her in the van, a man approached them and identified himself as the driver of the car that struck appellant. One of the police officers told the driver to "stand by" until they could get appellant on her way to the hospital. Wiley testified that he then attempted to approach the man and obtain identification from him, but was stopped by the police who told him they would take care of it. Wiley also testified that the driver had been hostile to him before the arrival of the police. The police then directed Wiley to get inside the van and accompany his companion to the hospital. By the time the van had left for the hospital, the driver had disappeared from the scene. Wiley testified that approximately fifteen to twenty minutes transpired between the time of the accident and the time the driver left the scene of the accident. He also testified that the man who said he was the driver was at the scene of the accident while the police were there for at least ten minutes.

Caldwell initiated this law suit alleging that the City, through its employees, the police officers, negligently failed to obtain the identity of the driver who struck her. She further alleged that as a result of the City's failure to properly investigate her case, she was deprived of her right to attempt to recover damages from the driver.[1]

After Caldwell filed this action, the City filed motions for judgment on the pleadings (February 9, 1980) and a motion for summary judgment (March 9, 1982). In those motions, which the lower court denied, the City argued that there was no legally cognizable duty owed to Caldwell under

---

1. We note that Caldwell told the police that she would not participate in the criminal prosecution of the driver. The Philadelphia Police Department eventually obtained considerable information surrounding this accident. Information provided by witnesses to the accident enabled police investigators to reconstruct all but one of the numbers of the license plate of the car which struck plaintiff. Police were able to obtain a list of the names and addresses of the owners of each possible license plate number in the state of Pennsylvania belonging to the car that hit plaintiff. Several of the names and addresses were of individuals not likely to be in the area of the City of Philadelphia when the accident occurred. This information may have aided Caldwell in obtaining the identity of the individual who hit her had she so desired.

which the City could be held liable in damages for her injuries. At trial, in its post-trial motions, and in this appeal, the City likewise argues that it had no duty to Caldwell.[2]

Having reviewed the evidence, together with all reasonable inferences, in the light most favorable to the verdict winner, we must now inquire whether these facts support a cause of action. The question for us, then, is whether the trial court should have found as a matter of law that the City, acting through its police officers, had no duty to Caldwell to conduct and to exercise reasonable care in its investigation and, therefore, could not be liable in damages for Caldwell's injuries. If this be the case, then the post-trial motion court should have granted the City's motion for judgment n.o.v.

First, we note that the City has not claimed immunity from liability. The facts that give rise to the this cause of action occurred in 1975. The judicial doctrine of governmental immunity was abrogated by our supreme court in 1973. *See Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973). It was partially reinstated by our legislature in the Political Subdivision

---

**2.** The City frames the issue on appeal as follows:

Having correctly concluded that a disappointed would-be civil litigant does not have a cause of action against a municipality for damages in the nature of a "lost" verdict based on the failure of its police officers to act as her civil accident investigators and provide her with a defendant, the lower court should have granted judgment n.o.v. in the City's favor rather than merely awarding a new trial.

We note that the trial court, sitting en banc to hear the post-trial motions, stated in its opinion that "the trial court should have instructed the jury that no legal duty was owed by the City to the plaintiff to insure the success of its police investigations." (Lower Court Opinion at p. 12, Hill, J. dissenting).

We disagree, therefore, with the lower court in its order granting a new trial. The assertion that no legal duty was owed, in our opinion, leads us to conclude that the City could not be liable. Accordingly, we believe that the court erred in allowing this case to go to the jury in the first instance and later in awarding a new trial. *See Morena v. South Hills Health Systems,* 501 Pa. 634, 462 A.2d 680 (1983). (Before sending a case to the jury, the trial court must determine whether or not plaintiff has met his burden of establishing the elements necessary to maintain the cause of action).

Tort Claims Act (Act), but not until 1978. *See* 42 Pa.C.S.A. §§ 8541–8564 (originally enacted as Act of 1978, November 26, 53 P.S. §§ 5311.101–803). As the accident in this case occurred in 1975, the Act is inapplicable.

█ Whether a municipality may be held liable for the failure of its police officers to obtain the identification of a motorist involved in an accident for the benefit of a victim is an issue of first impression in this Commonwealth. The City argues that it did not owe appellant a duty to exercise reasonable care in obtaining the driver's identification. Whether a police officer owes an individual a duty to exercise reasonable care depends, initially, on whether he is exercising a duty owed to the public at large or to an individual. Our courts have held that there is a distinction between duties that the police owe to the public at large and those to an individual. "Public" duties are usually redressed by "public" prosecutions.

[I]f the duty which the official authority imposes upon an officer is a duty to the public, then, a failure to perform it, or an inadequate or erroneous performance, must be a public not an individual injury and must be redressed, if at all, in some form of public prosecution.

*Berlin v. Drexel University*, 10 D & C 3rd 319, 326 (C.P. Phila Co. 1979) *quoting* 2 *Cooley on Torts*, § 300 at 385–86 (4th Ed.1932). It is clear that the police were exercising public duties in their protection and care of appellant at the accident scene.

█ In some limited instances, however, the duty to the public may become a duty to the individual if the police have a "special relationship" to the complainant that differs from that of the police to the general public. This "special relationship" may allow the police to be liable for negligent performance of their duty where otherwise liability would not exist. For example, police *protection* of citizens may become a private duty under special circumstances. *See Melendez v. City of Philadelphia*, 320 Pa.Super. 59, 64, 466 A.2d 1060, 1063 (1983); *Chapman v. City of Philadelphia*, 290 Pa.Super. 281, 283, 434 A.2d 753, 754 (1981); *Berlin v.*

*Drexel University, supra* at 328. *See also Miller v. United States,* 561 F.Supp. 1129, 1134 (E.D.Pa.1983), *aff'd. sub nom* appeal of *Miller,* 729 F.2d 1448 (3rd Cir.1984).

In *Berlin* the court held that a special relationship exists when "a member of the public has been exposed to a special danger ... and the authorities have *undertaken* the responsibility to provide adequate protection." *Berlin v. Drexel University, Id.* (Emphasis added.) *See also Miller v. United States, supra,* at 1134; *Chapman v. City of Philadelphia, supra,* 290 Pa.Super. at 283, 434 A.2d at 754. In *Melendez v. City of Philadelphia, supra,* this court further defined a special relationship to include the following three elements: 1) police awareness of the individual's particular situation; 2) knowledge by the police of the potential for the particular harm suffered; and, 3) a voluntary assumption by the police of the protection of the individual from the precise harm. *Id.* 320 Pa.Super. at 64, 466 A.2d at 1063–64. Examples of such special relationships include that of the police to a prosecution witness, a police informant, and an undercover agent. *Berlin v. Drexel University, Id.* In *Melendez,* this court held that a special relationship did not exist between appellant and the police department to support his claim for damages against the City. Appellant was injured during a racial confrontation between residents of his neighborhood. He argued that, as the police department and the human relations commission had been apprised of the neighborhood's racial problems, the City owed him a special duty of protection.

We do not believe a special relationship arose between Caldwell and the police under the circumstances of this case. At no time did the police officer's activities with respect to Caldwell take on the character of a "special relationship" to enable appellant to sue in a private action. Cases using the "special relationship" analysis to impose liability have involved police protection of individuals. Not only do we believe that police protection differs significantly from police investigations, but we do not believe that the police ever voluntarily assumed to accord appellant particu-

lar benefits not accorded to the public at large. *See Berlin, Id.* The police adequately performed their duties toward Caldwell when they encountered her for the first time at the scene of the accident. Accordingly, we agree with the appellee that no special relationship existed between these two parties and, therefore, the police had no duty to appellant to obtain the driver's identification.

Furthermore, the police never dealt directly with Caldwell at the scene of the accident with respect to the accident's investigation. The police dealt only in a limited respect with her companion regarding the investigation when they told him they would take care of obtaining the driver's identification. The police, arriving at the scene of the accident, responded promptly and efficiently in securing Caldwell's removal to the hospital. Caldwell would have us hold that a special relationship arose for purposes of investigating her claim. We decline to so rule.

While there is no precise authority on this issue in our jurisdiction, our Supreme Court in *Stupka v. Peoples Cab Company,* 437 Pa. 509, 264 A.2d 373 (1970) enunciated principles which give support to our decision. In *Stupka,* the plaintiff passenger sued the defendant cab company for failing to obtain the identity of a driver who struck the cab causing injuries to the plaintiff. Her theory was that the cab driver owed her a duty to secure the hit-and-run driver's identification. Accordingly, she asserted that his failure to perform the duty was negligence so as to permit her to recover. Our supreme court held against plaintiff stating that the defendant had no duty to obtain sufficient information about individuals involved in traffic accidents to enable plaintiff to bring suit. The court noted that the only legal duty the defendant had to plaintiff was regarding her physical well-being: offering her assistance after she suffered injury. The court concluded its opinion stating that "An individual's financial interests can be so complex and varied that we should not require the carrier to be cognizant of them and responsible for furthering and protecting them." *Id.* 437 Pa. at 513, 264 A.2d at 374.

█ We believe the case under review to be similar because we hold that the police had no duty to protect the financial interests of the plaintiff under these circumstances. We further believe that the police's only duty to the plaintiff were public duties to ensure her physical well-being in expediting her trip to the hospital. Accordingly, we hold that the police had no duty to plaintiff to secure identification from the driver for purposes of plaintiff's civil claim.

Other jurisdictions have held that police are not liable for alleged negligent investigations. In *Warren v. District of Columbia,* 444 A.2d 1 (D.C.1981) the plaintiff was assaulted by occupants of a car that stopped behind him at a traffic light. A policeman arrived at the scene and directed the plaintiff's companion to cease his efforts to obtain the assailants' identification in order to break up the fight. The officer left the scene without obtaining identification. The plaintiff sued the District of Columbia and the police officer for failing to obtain the assailants' identification. The court held that any duty that the officer had to obtain the identification was related to his duty to the public and that there was no additional element that created a special relationship between the plaintiff and the police officer. *Id.* at 3–4.

In *Jackson v. Heymann,* 126 N.J.Super. 281, 314 A.2d 82 (Law Div.1973), the plaintiff sued the city because a police investigation failed to discover the identity of a hit and run driver who had injured her child. *Id.* at 282–83, 314 A.2d at 83. The New Jersey Superior Court held that the municipality did not owe the plaintiff a duty to conduct a motor vehicle accident investigation even though New Jersey law required local governments to file accident reports in connection with criminal prosecutions. *Id.* at 287, 314 A.2d at 85–86. The court there stated:

In compliance with the statute, police officers file their reports with the director of motor vehicles. They are utilized by the prosecutor's office in cases requiring criminal and quasi-criminal proceedings. However, because of

their usual availability, the reports in a vast majority of cases ultimately become a part of the parties files in civil litigations. It is to be noted that this is a separate and secondary utilization of the reports. There is no statutory mandate requiring preparation of such reports for civil proceedings. The purpose of the reports, from the police officer's position, is not the same as a civil investigator. Plaintiff here seeks to place upon each action in investigation by a police officer the duty of a civil law investigator....

It is the opinion of this court that, as a matter of law, a municipality does not owe a duty to victims to conduct an investigation of their motor vehicle accidents. Since the city owes no duty to plaintiff, it cannot be held answerable to plaintiff in negligence [cite omitted]. This court is unwilling, absent legislation, to extend the police officer's role in the investigation of accidents to that of an investigator for civil litigants.

*Jackson v. Heymann*, 126 N.J.Super. 281, 285–287, 314 A.2d 82 (1973). We agree with the reasoning of the New Jersey courts. Police officers are entrusted with important responsibilities to protect public safety. Their primary concern at an accident scene is to render aid to injured parties and protect people who might be at risk. This includes preventing a possible confrontation, as in this case, between the driver and the injured party's friend. Their duties are not that of a civil investigator. While it is true that police officer's reports are often used in civil litigation, this does not impose a duty on them towards a private individual to obtain such an accident report. We also note that the driver in this case violated his statutory duty to identify himself and give information as to his license and insurance at the scene of the accident. 75 Pa.C.S.A. § 3744(a)(b).[3]

3. 75 Pa.C.S.A. § 3744 (Duty to give information and render aid) states in pertinent part:
(a) General rules.—The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give his name, address and the registration number of the

This statute imposes an affirmative duty upon a driver to remain at the scene of the accident until he gives the necessary information to the injured party or to the police. The driver in this case violated the statute by leaving before the police could get this information. It is an irrational imputation of tort responsibility to impose liability upon the police and the City where the driver has violated his express statutory duty to give information.

In *Falco v. City of New York*, 34 A.D.2d 673, 310 N.Y.S.2d 524 (1970), *aff'd.* 29 N.Y.2d 918, 329 N.Y.S.2d 97, 279 N.E.2d 854 (1972), the New York court considered a case factually similar to the this case and found that there was no special relationship and, therefore, no liability would be imposed. There, the plaintiff was injured when he was hit by a car while riding his motorcycle. While lying on the ground injured, he asked the police officer to obtain for him the name and license number of the driver. The police officer told the plaintiff that he would take care of everything. The plaintiff then observed the police officer talking with the driver, but the officer failed to obtain any identification, precluding the plaintiff from instituting suit against the driver. *Id.* at 674, 310 N.Y.S.2d at 525. The court

vehicle he is driving, and shall upon request exhibit his driver's license and proof of insurance to any person injured in the accident or to the driver or occupant of or person attending any vehicle or other property damaged in the accident and shall give the information and upon request exhibit the license and proof of insurance to any police officer at the scene of the accident or who is investigating the accident and shall render to any person injured in the accident reasonable assistance, including the making of arrangements for the carrying of the injured person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if requested by the injured person. (b) Report of accident to police.—In the event that none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (a) and no police officer is present, the driver of any vehicle involved in the accident after fulfilling all other requirements of section 3742 (relating to accidents involving death or personal injury) and subsection (a), in so far as possible on his part to be performed, shall forthwith report the accident to the nearest office of a duly authorized police department and submit to the police department the information specified in subsection (a).
75 Pa.C.S.A. § 3744(a) and (b).

concluded that no relationship existed between the plaintiff and the police officer that created a duty to use care for the plaintiff's benefit. Accordingly, it would not impose liability on the municipality for the police officer's negligence. *Id.* Also, in *McNeil v. Town of Hempstead,* 60 Misc.2d 797, 303 N.Y.S.2d 803 (Sup.Ct.1969), *aff'd.,* 34 A.D.2d 958, 313 N.Y.S.2d 652 (1970), the New York court held that a municipality could not be liable for an officer's failure to secure the names of a driver and owner of the vehicle which struck a plaintiff's intestate. This was true even though the driver was still at the accident site when the officers arrived. The court borrowed language from *Riss v. City of New York,* 22 N.Y.2d 579, 583, 293 N.Y.S.2d 897, 899, 240 N.E.2d 860, 861 (1968) where Judge Breitel stated:

Before such extension of responsibilities should be dictated by the indirect imposition of tort liabilities, there should be a legislative determination that that should be the scope of public responsibility (Van Alstyne *Governmental Tort Liability,* 10 UCLA L.Rev. 463, 467; note 60 Mich.L.Rev. 379, 382).... To foist a presumed cure for these problems [of increased crime] by judicial innovation of a new kind of liability in tort would be foolhardy indeed and an assumption of judicial wisdom and power not possessed by the courts.... There is no warrant in judicial tradition or in the proper allocation of the powers of government for the courts in the absence of legislation, to carve out an area of tort liability for police protection for members of the public. *Id.* 293 N.Y.S.2d at 898, 899, 240 N.E.2d at 861.

We agree with Judge Breitel that it would be improper to impose liability on the police absent a legislative determination. We further agree that it would be judicial overreaching to extend tort liability to police negligence in this area.

Courts in some jurisdictions, most notably California, have held police officers to be liable in related circumstances. In *Williams v. State,* 34 Cal.3d 18, 664 P.2d 137, 192 Cal.Rptr. 233 (1983), the California court stated that, "when

the state, through its agents, voluntarily assumes a protective duty towards a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, it is held to the same standard of care as a private person...." *Id.* at 24, 664 P.2d at 140, 192 Cal. Rptr. at 236. In *Clemente v. State,* 40 Cal.3d 202, 707 P.2d 818, 219 Cal.Rptr. 445 (1985) the California Supreme Court borrowed from the *Williams'* analysis to a fact pattern similar to that in the instant case. In *Clemente,* the plaintiff was struck by a motorcycle as he was crossing the street at an intersection. A state highway patrol officer arrived at the scene just as a group of bystanders had begun to assist the plaintiff. The motorcyclist approached the officer and told him that he had struck the plaintiff. The officer directed the motorcyclist not to leave the scene but to await the arrival of the Los Angeles Police Department. The officer then left the scene without obtaining the motorcyclist's name or license number, and his identity was never discovered. Relying on its prior decision in *Williams* the court recalled that there it had recognized that a duty of care may arise when a patrol officer's conduct results in a plaintiff's detrimental reliance on the officer for protection. The *Clemente* court noted that the officer induced the plaintiff's reliance and that the officer's conduct had prevented bystanders from obtaining the driver's identification for the plaintiff. Thus, the court concluded that the plaintiff could properly state a cause of action against the state of California and its highway patrol officer. *Id.* at 213, 707 P.2d at 824, 219 Cal.Rptr. at 451. We decline to follow those cases.

We hold, then, that under the evidence in this case there is no responsibility on the City for the failure of its agents or employees to obtain the identity of the offending motorist.

■ Caldwell also raises procedural issues in this appeal. Caldwell first argues that the lower court erred in granting the City's motion for a new trial because the City failed to preserve for appeal its grounds for a new trial. Appellant

first argues that the City failed to request a jury instruction on "special relationship." *See Chapman v. City of Philadelphia*, 290 Pa.Super. 281, 434 A.2d 753, (1981). Therefore, she argues that the court erred in reversing the jury's verdict on the ground that it failed to instruct the jury that any legal duty owed by the City to appellant had to be predicated on a finding of a special relationship between them. We disagree.

The City requested the following point for charge:

there is no legal duty imposed upon the City of Philadelphia to insure the success of its police investigation, and it cannot be held to be legally responsible for unsuccessful investigations.

As its grounds for a new trial, the City argued that the jury should have been instructed that it did not owe appellant a duty of care. Thus, although the City did not specifically employ the term "special relationship" in its requested points for charge we conclude that it properly preserved the duty issue for review. Judge Hill, dissenting to the en banc panel's majority opinion, would have found the City's contention waived because he believed that its requested point for charge covered only the question of the police duty to investigate following the driver's disappearance rather than its duty at the scene of the accident. We believe that the term "police investigation" in the City's requested point for charge encompassed both aspects of the police investigation.

■ Appellant also argues that the City failed to object to the court's charge to the jury and, therefore, waived its right to object to the court's failure to charge on duty and whether the City's action was the proximate cause of appellant's injuries. This claim is likewise meritless. The City submitted requested points for charge on both issues. The lower court denied both and the City took an exception to each. An exception to the trial court's refusal to charge the jury as requested is sufficient to preserve the issue for appeal even if there is no specific objection to the charge at trial. *Jones v. Montefiore Hospital*, 494 Pa. 410, 415 n. 5,

431 A.2d 920, 923 n. 5 (1981); *Gradel v. Inouye,* 491 Pa. 534, 540 n. 6, 421 A.2d 674, 677 n. 6 (1980). Accordingly, we conclude that the City did not waive its grounds for a new trial.

■ Appellant also contends that the lower court erred in granting the city leave to file post-trial motions *nunc pro tunc.* We disagree. The City filed its post-trial motions the morning after the ten day filing period expired. *See* Pa.R.C.P. 227.1(c). (Post-trial motions shall be filed within ten days after verdict). They assert that the motions were filed on the morning following the tenth day after the verdict because the clerk's office assured it on the tenth day that filings are accepted as timely when filed the following morning. The lower court, relying on Pennsylvania decisions holding that judicial review on the merits is preferable to dismissal on technical grounds, held that leave to file the motions *nunc pro tunc* was properly granted. *See* lower court opinion at 5 citing *Estate of Vittorio,* 290 Pa.Super. 329, 331 n. 1, 434 A.2d 777, 778 n. 1 (1981); *First Valley Bank v. Steinmann,* 253 Pa.Super. 8, 11, 384 A.2d 949, 951 (1978); *Thornbury Twp. v. Jones,* 6 Pa.Commonwealth Ct. 69, 72–73, 293 A.2d 149, 151 (1972). We agree and conclude that the court did not abuse its discretion in granting the City leave to file its motions *nunc pro tunc. See Gutman v. Rissinger,* 334 Pa.Super. 259, 482 A.2d 1324 (1984) (lower court did not abuse its discretion in considering post-trial motions filed thirteen days after verdict where parties substantially complied with Pa.R.C.P. 227.1(c) and adverse party raised no allegations of prejudice).

■ Appellant contends that the City waived its right to move for judgment n.o.v. because it failed to request a directed verdict at trial. Appellant relies on *Broxie v. Household Finance Co.,* 472 Pa. 373, 372 A.2d 741 (1977) to support her contention. This claim is meritless. In *Broxie* our supreme court concluded that a party waives the right to move for a judgment n.o.v. if he or she neither objects to a jury charge on the ground at issue nor offers a specific point for charge. *Id.,* 472 Pa. at 377, 372 A.2d at 744.

Here, the City both requested a specific point for charge and objected to the court's denial of its request. *See also Frank v. Peckich*, 257 Pa.Super. 561, 578, 391 A.2d 624, 632 (1978) (judgment n.o.v. may be sought only by party who submits point for charge requesting binding instructions). Accordingly, we do not find merit in Caldwell's argument.

For the reasons set out above, we hold that the City was not liable in this instance where its police officers failed to obtain the driver's identification or to investigate this accident. This would be a rationally unwarranted extension of the fault concept and would ultimately fix responsibility on the taxpayer because a private citizen had violated the law and left the scene of an accident. Accordingly, we vacate the lower court's award of a new trial, reverse the lower court's denial of judgment n.o.v., and enter judgment in favor of the cross-appellant, City of Philadelphia.

Award of new trial vacated. Lower court's denial of judgment n.o.v. reversed, and judgment entered in favor of the City of Philadelphia.

HOFFMAN, J., files a dissenting opinion.

HOFFMAN, Judge, dissenting:

I dissent. Cross-appellant, the City of Philadelphia, contends that a "would-be civil litigant" does not have a cause of action against a municipality for the failure of its police officers to investigate properly an accident and that the court should have granted its motion for judgment n.o.v. and not awarded a new trial. Appellant contends in response that the jury's verdict should be reinstated because the City's acts gave rise to a legally cognizable claim for damages. Because I believe that the jury was not properly charged, I would affirm the lower court's order granting a new trial.

In the early evening on February 17, 1975, appellant and her friend Charles Wiley were struck by an automobile as they were walking across an intersection. Appellant was knocked to the ground and sustained various injuries. Wi-

ley, who was not seriously injured, directed traffic to prevent any further injury to appellant while she was lying in the street. Shortly after the accident, two police vehicles, a cruiser and a van, arrived at the scene. The two officers in the van and the sergeant who arrived in the cruiser placed appellant on a stretcher and began to lift her into the van. As they were placing her in the van, a man approached them and identified himself as the driver of the car that struck appellant. One of the police officers told the driver to "stand by" until they could get appellant on her way to the hospital. Wiley testified that he then attempted to approach the man and obtain some identification from him but was stopped by the police who told him that they would take care of it. N.T. October 26, 1982 at 14. The police then directed Wiley to get inside the van. Some time following the accident, two other patrol cars arrived. Sergeant Smith, the first police officer to arrive, testified that he believed, but was not certain, that the two patrol cars arrived after appellant had been taken to the hospital in the van. *Id.* at 34–35. Wiley testified that the officers who arrived in the two patrol cars had been on the scene directing traffic around appellant when she was lying in the street. By the time the van left for the hospital, the driver had disappeared from the scene.

On February 10, 1977, appellant filed a complaint against the City alleging that the police officers at the scene of the accident negligently failed to obtain the driver's identification and thus deprived her of the ability to sue the driver for her injuries. The City filed a motion for judgment on the pleadings contending that appellant had failed to state a cause of action because the City does not have a duty to investigate civil accident claims. The motion was denied and the case was tried before a jury on October 25, 1982. The jury returned a verdict in favor of appellant in the amount of $175,000. The City filed post-verdict motions for a new trial and for judgment n.o.v. The motions were argued before the lower court *en banc.* A majority of the three-judge *en banc* panel granted the City's motion for a new trial and denied its motion for judgment n.o.v. Appel-

lant has appealed from the grant of a new trial. The City filed a cross-appeal from the order insofar as the court failed to grant its motion for judgment n.o.v.

The City, on cross-appeal, contends that the lower court erred in failing to grant its motion for judgment n.o.v. because "a disappointed would-be civil litigant does not have a cause of action against a municipality for damages in the nature of a 'lost' verdict based on the failure of its police officers to act as her civil accident investigators and provide her with a defendant." [1] Brief for the City of Philadelphia at 12. Appellant responds that the jury verdict was proper because, under the instant circumstances, there was a special relationship between the police officers and herself that imposed a duty on them to obtain the drivers identification.

Whether a municipality may be held liable for the failure of its police officers to obtain the identification of a hit-and-run driver for the benefit of a victim is an issue of first impression in this Commonwealth. The City first argues that it did not owe appellant a duty to exercise reasonable care in obtaining the driver's identification. To resolve this question, I would inquire (1) whether an ordinary citizen in the same position as the police officers would have a duty to obtain the driver's identification, and (2) whether the officers' status as municipal employees affords a shield from a civil liability for the failure to perform properly an official police function.

As a general rule, a person does not have a duty to aid another even if he or she realizes that his or her aid is necessary. *See Restatement (Second) of Torts* (Restatement) § 314 (1966). *See also Yania v. Bigan*, 397 Pa. 316, 155 A.2d 343 (1959). Once a person begins to aid another,

---

**1.** This is the City's paraphrase of the lower court's conclusions that (1) there was no special relationship between the police officers and appellant, Lower Court Opinion at 9, 11, 12; and (2) the City's acts or failure to act were not the proximate cause of appellant's injuries and, therefore, appellant could not recover from the City, *id.* at 14. Were the lower court's conclusions correct, I would agree with the City that the court should have granted its motion for judgment n.o.v. rather than its motion for a new trial.

however, he or she may be liable for injuries that result from a failure to exercise reasonable care in that undertaking. This tort concept, known as the good samaritan rule, is stated in § 323 of the Restatement, which provides that:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

\*     \*     \*     \*     \*     \*

(b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement § 323. *See also Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978) (applying § 323); *DeJesus v. Liberty Mutual Insurance Co.*, 423 Pa. 198, 223 A.2d 849 (1966) (applying § 323).

While § 323 of the Restatement, by its terms, applies only to liability for physical harm, I believe that in Pennsylvania the principle embodied in the section also applies to liability for economic harm such as that allegedly suffered here. This rule was the law in this Commonwealth before any of our appellate courts had expressly relied on § 323 itself. In *Pascarella v. Kelley*, 378 Pa. 18, 105 A.2d 70 (1954) our Supreme Court held that a party could recover for a negligent undertaking, but did not expressly require that the injured party suffer physical harm. The Court stated that:

"If a party make a gratuitous engagement and actually enters on the execution of the business and so negligently does it from want of care that another suffers damage thereby, an action will lie for this misfeasance."

*Id.*, 378 Pa. at 23, 105 A.2d at 73 (quoting *Rehder v. Miller*, 35 Pa.Superior Ct. 344, 347 (1908)). Similarly, in *Pirocchi v. Liberty Mutual Insurance Co.*, 365 F.Supp. 277 (E.D.Pa. 1973), the United States District Court for the Eastern District of Pennsylvania, applying Pennsylvania law, employed this rule in a case alleging harm similar to that in

the instant case. There, the plaintiff alleged that the defendant claim adjuster's failure to preserve physical evidence in its custody had destroyed his cause of action against a third party. *Id.* at 279. The defendant contended that it did not have a duty towards the plaintiff to maintain the evidence. The court refused to grant summary judgment on this ground, concluding that the jury could find that the defendant had undertaken a duty to preserve the evidence once it assumed control over it. *Id.* at 281–82. *See also Quinones v. United States,* 492 F.2d 1269 (3d Cir.1974) (plaintiff stated cause of action where he alleged that former employer had undertaken duty to maintain proper employment records and breach of that duty resulted in his rejection by potential employers); *Western Union Telegraph Co. v. Direnzi,* 442 F.Supp. 1 (E.D.Pa.1977) (plaintiff may state cause of action for money damages where plaintiff undertook to perform act although under no initial duty to so perform). Courts in other jurisdictions, applying § 323, have permitted recovery for other than physical harm. *See, e.g., Adkins & Ainley, Inc. v. Busada,* 270 A.2d 135 (D.C.1970) (negligent undertaking to provide insurance; monetary loss); *Blackmon v. Nelson, Hesse, Cyril, Weber & Sparrow,* 419 So.2d 405 (Fla.Dist.Ct.App. 1982) (*per curiam* ) (law firm undertaking to provide employee with health insurance; monetary loss); *McDonald v. Title Insurance Co.,* 49 Or.App. 1055, 621 P.2d 654 (1980) (negligent undertaking to provide legal advice; monetary loss); *Schwartz v. Greenfield, Stein & Weisinger,* 90 Misc.2d 882, 396 N.Y.S.2d 582 (Sup.Ct.1977) (negligent undertaking to perfect security interest; monetary loss). I would therefore conclude that an ordinary citizen would not be precluded from recovery under § 323 of the Restatement simply because the harm alleged is economic rather than physical.

I also do not believe that appellant's recovery is precluded by *Stupka v. Peoples Cab Co.,* 436 Pa. 509, 264 A.2d 373 (1970). In *Stupka,* the plaintiff was injured when the taxicab in which she was a passenger was struck from behind by another vehicle. The cab driver got out of his

cab and spoke to the driver of the other vehicle, but failed to secure his name or other identification before he left the scene of the accident. The plaintiff sued the cab driver for negligently failing to obtain the identification of the hit-and-run driver and her consequent loss of a financial recovery from the driver. The Court held that the cab driver was not under a duty to protect his passenger's financial interest. *Id.*, 436 Pa. at 512–13, 264 A.2d at 374. The Court thus ruled only that the cab driver lacked an affirmative duty to obtain the driver's identification. It did not address whether or not the driver had undertaken to perform this service for the plaintiff and had thereby induced her reliance. *Stupka* is therefore not controlling.

If the inquiry ended here, I would conclude that the jury should have been instructed pursuant to § 323 that the officers had a duty to exercise reasonable care in obtaining the driver's identification if their acts at the scene of the accident constituted an undertaking to obtain the identification, and the undertaking induced appellant's reliance on them to so perform. Because, however, the police officers are agents of a municipality, the question whether that status shields them from liability here must be addressed. Our courts have held that there is a distinction between duties that the police owe to the public at-large and those to an individual.

"[I]f the duty which the official authority imposes upon an officer is a duty to the public, then, a failure to perform it, or an inadequate or erroneous performance, must be a public not an individual injury, and must be redressed, if at all, in some form of public prosecution."

*Berlin v. Drexel University,* 10 D. & C.3d 319, 326 (C.P.Phila.Co.1979) (quoting 2 *Cooley on Torts* § 300, at 385–86 (4th ed. 1932)).

The duty to the public, however, may become a duty to an individual if the police have a "special relationship" to the complainant that differs from that of the police to the general public. *See Melendez v. City of Philadelphia,* 320 Pa.Superior Ct. 59, 64, 466 A.2d 1060, 1063 (1983); *Chap-*

man v. City of Philadelphia, 290 Pa.Superior Ct. 281, 283, 434 A.2d 753, 754 (1981); Berlin v. Drexel University, supra at 328. See also Miller v. United States, 561 F.Supp. 1129, 1134 (E.D.Pa.1983), aff'd sub nom. Appeal of Miller, 729 F.2d 1448 (3d Cir.1984).

In Berlin, the court held that a special relationship exists when "a member of the public has been exposed to a special danger ... and the authorities have undertaken the responsibility to provide adequate protection." Berlin v. Drexel University, supra at 328. See also Miller v. United States, supra at 1134; Chapman v. City of Philadelphia, supra 290 Pa.Super. at 283, 434 A.2d at 754. In Melendez v. City of Philadelphia, supra, this Court further defined a special relationship to include the following three elements: (1) police awareness of the individual's particular situation; (2) knowledge by the police of the potential for the particular harm suffered; and (3) a voluntary assumption by the police of the protection of the individual from the precise harm. Id. 320 Pa.Super. at 64, 466 A.2d at 1063–64. Examples of such a special relationship include that of the police to a prosecution witness, a police informant, and an undercover agent. Berlin v. Drexel University, supra at 328.

Courts in other jurisdictions have ruled on the issue presented here, whether the police have a duty to obtain a tortfeasor's identification for an injured party, and have analyzed the municipality's duty under the rubric of the special relationship test. In Williams v. State, 34 Cal.3d 18, 664 P.2d 137, 192 Cal.Rptr. 233 (1983), the plaintiff, a passenger in an automobile, was injured when a heated brake drum from a passing truck was propelled through the car windshield. Several police officers arrived at the scene of the accident and assumed the responsibility of investigating it. The plaintiff alleged that the police officers' failure to identify witnesses and pursue the truck owner prevented her from instituting a civil action for damages against the party who caused her injuries. Id. at 21–22, 664 P.2d at 138, 192 Cal.Rptr. at 234. In determining whether the police owed plaintiff a duty to investigate her accident, the

California Supreme Court noted that, although highway patrol members do not have a special relationship to the motoring public in general, the existence of certain factors would impose a duty on the patrol officers to exercise the standard of care to which an ordinary person is held. The court stated that, "when the state, through its agents, voluntarily assumes a protective duty towards a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, it is held to the same standard of care as a private person...." *Id.* at 24, 664 P.2d at 140, 192 Cal.Rptr. at 236. In *Williams*, however, the plaintiff had alleged only nonfeasance, or the failure to the police to perform certain investigatory functions. The court noted that she did not allege that the officers assured her that they would investigate, that they induced her to rely on them, that they prevented her from conducting her own investigation, or that a police investigation would have identified the responsible party. *Id.* at 27 n. 8, 664 P.2d at 142 n. 8, 192 Cal.Rptr. at 238 n. 8. Accordingly, the court concluded that the plaintiff had failed to state a cause of action against the state because she did not establish that it owed her a duty of care. *Id.* at 27–28, 664 P.2d at 143, 192 Cal.Rptr. at 239.

In *Clemente v. State*, 40 Cal.3d 202, 707 P.2d 818, 219 Cal.Rptr. 445 (1985), the California Supreme Court applied the *Williams* analysis to a fact pattern similar to that in the instant case. In *Clemente* the plaintiff was struck by a motorcycle as he was crossing the street at an intersection. A state highway patrol officer arrived at the scene just as a group of bystanders had begun to assist the plaintiff. The motorcyclist approached the officer and told him that he had struck the plaintiff. The officer directed the motorcyclist not to leave the scene but to await the arrival of the Los Angeles Police Department. The officer then left the scene without obtaining the motorcyclist's name or license number, and his identity was never discovered. *Id.* at 209, 707 P.2d at 821, 219 Cal.Rptr. at 448. Relying on its prior

decision in *Williams*, the court recalled that there it had recognized that a duty of care may arise when a patrol officer's conduct results in a plaintiff's detrimental reliance on the officer for protection. *Id.* at 212, 707 P.2d at 823, 219 Cal.Rptr. at 450. The *Clemente* court noted that the officer had induced the plaintiff's reliance, and that the officer's conduct had prevented bystanders from obtaining the driver's identification for the plaintiff. Thus, the court concluded that the plaintiff could properly state a cause of action against the State of California and its highway patrol officer. *Id.* at 213, 707 P.2d at 824, 219 Cal.Rptr. at 451.

Three other jurisdictions have addressed whether a municipality may be held liable for its police officers' negligent failure to obtain a tortfeasor's identification. In each case, the court began its analysis by determining whether a special relationship obtained between the police and the plaintiff and concluded that such a relationship was absent. In *Warren v. District of Columbia*, 444 A.2d 1 (D.C.1981), the plaintiff was assaulted by occupants of a car that stopped behind him at a traffic light. A police officer arrived at the scene and directed the plaintiff's companion to cease his efforts to obtain the assailants' identification in order to break up the fight. The officer left the scene without obtaining identification. *Id.* at 3. The plaintiff sued the District of Columbia and the police officer for failing to obtain the assailants' identification. The court held that any duty that the officer had to obtain the identification was related to his duty to the public and that there was no additional element that created a special relationship between the plaintiff and the police officer. *Id.* at 3–4. *Warren* is distinguishable from the instant case, however, because there the police officer prevented the plaintiff from obtaining his assailants' identification in an attempt to halt the melee. The officer did not, as here, promise the plaintiff that he would obtain the identification. Thus, all of the elements necessary to show an undertaking were not present.

In *Jackson v. Heymann,* 126 N.J.Super. 281, 314 A.2d 82 (Law Div.1973) the plaintiff sued the City because a police investigation failed to discover the identity of a hit-and-run driver who had injured her child. *Id.* at 282–83, 314 A.2d at 83. The New Jersey Superior Court held that the municipality did not owe the plaintiff a duty to conduct a motor vehicle accident investigation. *Id.* at 287, 314 A.2d at 85–86. *Jackson,* like *Warren,* can be distinguished from the instant case. In *Jackson,* the police did not know who struck the child. The police arrived after the driver had fled, and then attempted to carry out an investigation to discover the tortfeasor's identity. Thus, the elements of dependence and reliance were missing because the police did not promise to secure nor prevent the plaintiff from obtaining the driver's identification.

Finally, in *Falco v. City of New York,* 34 A.D.2d 673, 310 N.Y.S.2d 524 (1970), *aff'd,* 29 N.Y.2d 918, 329 N.Y.S.2d 97, 279 N.E.2d 854 (1972), the court also considered a case factually similar to the instant case and found that there was no special relationship. There, the plaintiff was injured when he was hit by a car while riding his motorcycle. While lying on the ground injured, he asked a police officer to obtain for him the name and license number of the driver. The police officer told the plaintiff that he would take care of everything. The plaintiff then observed the police officer talking with the driver, but the officer failed to obtain any identification, precluding the plaintiff from instituting suit against the driver. *Id.* at 674, 310 N.Y.S.2d at 525. The court concluded summarily that no relationship existed between the plaintiff and the police officer that created a duty to use care for the plaintiff's benefit and that would impose liability on the municipality for the police officer's negligence. *Id. See also McNeil v. Town of Hempstead,* 60 Misc.2d 797, 303 N.Y.S.2d 803 (Sup.Ct.1969), *aff'd,* 34 A.D.2d 958, 313 N.Y.S.2d 652 (1970). The New York Court of Appeals, then, would hold that police officers do not have a duty of care under facts similar to those in the instant case. I would decline to follow that case.

After considering the caselaw of this Commonwealth that would impose a duty to use reasonable care on one who undertakes to perform a service to prevent harm to another who relies on that performance, caselaw defining the elements of a special relationship in this Commonwealth, and the conclusion of the California Supreme Court that the elements of an undertaking in combination with facts showing that a police officer prevented other aid also create the special relationship necessary to impose a duty on a police officer towards an individual citizen, I believe that there is evidence in the record here that would support the conclusion that the police officers owed appellant such a duty. In *Clemente v. State, supra,* the court recounted that the plaintiff was in a position of dependence on the patrol officer, that the driver approached the officer and admitted that he was at fault and that the officer's conduct prevented the plaintiff from obtaining the driver's identification. The court held that a duty of care to the plaintiff could be predicated on this conduct. Here, there is evidence in the record that the driver approached the police and stated that he was at fault, that the police prevented the plaintiff from obtaining the driver's identification, and that the plaintiff therefore became dependent on and relied on the police officer.[2]

I emphasize that I would not create a new duty on the part of the police to obtain a tortfeasor's identification for the benefit of an accident victim. Instead, I would hold only that if a police officer prevents a victim from obtaining a tortfeasor's identification and assures the victim that he or she will obtain it, and if the tortfeasor is available and

**2.** The City argues that the police should not be required to "choose between jostling a seriously injured individual ... and protecting any potential interest in civil litigation she might decide to pursue after her recovery." Brief for the City of Philadelphia at 13. This concern is not relevant to whether the police had undertaken a duty, but whether they exercised reasonable care in carrying out that duty. Here, the officers who placed appellant in the police wagon and who were approached by the driver could have refrained from assuring Wiley that they would take care of securing the driver's identification. Alternatively, they could have allowed Wiley to get the necessary information, or directed one of the other officers to do so.

known to the police, the good samaritan rule of § 323 of the Restatement will apply to a police officer as though he or she were a private citizen to impose a duty to exercise reasonable care in that undertaking.

In determining whether fundamentally erroneous instructions require the grant of a new trial, whether such instructions did or did not bring about the complained of verdict is not the question. If it appears that such instructions *might* have been responsible for the verdict, a new trial is mandatory.

*Jones v. Montefiore Hospital,* 494 Pa. 410, 420, 431 A.2d 920, 925 (1981) (quoting *Riesberg v. Pittsburgh & Lake Erie Railroad,* 407 Pa. 434, 180 A.2d 575 (1962). *See also McCann v. Amy Joy Donut Shops,* 325 Pa.Superior Ct. 340, 342, 472 A.2d 1149, 1150 (1984).

Here, the only instruction given to the jury on duty was the following: "[i]t is the duty of every person to use ordinary care, not only for his own safety and the protection of his property, but also to avoid injury to others." N.T. October 28, 1982 at 3.52. Because I would conclude that the City owed appellant a duty only if its actions contained all of the elements of an undertaking, I would also conclude that the jury instruction was erroneous. Because the jury may have reached its verdict based on the general duty instruction, I would remand for a new trial. At the new trial, I would direct that the jury be instructed that the police officers undertook a duty to exercise reasonable care to obtain the driver's identification if it finds that (1) the officers began to obtain the driver's identification, (2) the officers induced appellant's reliance, and (3) the officers prevented appellant, or someone acting in her behalf, from obtaining the identification.

The City also contends that the lower court erred in failing to grant its motion for judgment n.o.v. because the police officers did not cause appellant's physical injuries. The City relies on *Stupka v. Peoples Cab Co., supra*

(JONES, C.J., concurring), for the proposition that there was no causal relationship between the police officer's breach of duty and appellant's injuries, and thus there can be no recovery. I disagree. The *Stupka* majority did not reach the causation issue because it concluded that the cabdriver there did not owe the plaintiff a duty of care. *Stupka v. People's Cab Co., supra* 437 Pa. at 512–13, 264 A.2d at 374. Thus, *Stupka* has no bearing on the disposition of the causation issue.

Furthermore, appellant does not contend that the City caused her physical injuries, but that it was the proximate cause of her financial loss. I agree. Appellant's claim is similar to a client's malpractice suit against his or her attorney for the loss of a favorable judgment. In such cases,

> [t]he orthodox view, and indeed virtually the universal one, is that when a plaintiff alleges that the defendant lawyer negligently provided services to him or her as a plaintiff in the underlying action, he or she must establish ... that he or she would have recovered a judgment in the underlying action in order to be awarded damages in the malpractice action, which are measured by the lost judgment.

*Duke & Co. v. Anderson*, 275 Pa.Superior Ct. 65, 71, 418 A.2d 613, 616 (1980) (quoting *Williams v. Bashman*, 457 F.Supp. 322, 326 (E.D.Pa.1978)). Here, the lower court instructed the jury that it had to resolve whether appellant could have recovered against the driver in order to recover from the City. N.T. October 28, 1982 at 3.53. Thus, I would conclude that the court did not err in refusing to grant the City's motion for judgment n.o.v. on this ground.

For the foregoing reasons, I would affirm the lower court's order granting the City's motion for a new trial and denying its motion for judgment n.o.v. and remand for a new trial. Upon remand, I would direct that the jury be charged in accordance with this opinion.