# Ward v. Torchia

C.P. of Lehigh County, no. 96-C-1540.

*Richard W. Shaffer Jr.,* for plaintiffs.

316

*Patrick J. Reilly,* for defendant.

BLACK, *J.,* June 6, 2000—Now, May 30, 2000, following trial without jury, the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

(1) At all material times plaintiff Edmond Ward was the owner of a dwelling located at 7612 Chestnuthill Church Road, Coopersburg, Lehigh County, Pennsylvania.

(2) At all material times defendant Jasper A. Torchia was a real estate broker licensed to do business in the Commonwealth of Pennsylvania and trading as Re/Max Preferred Realty.

(3) Prior to May 26, 1994, Ward engaged Torchia as a broker to list the property for sale.

(4) During the listing period Ward did not reside in the property, which was vacant.

(5) Torchia scheduled a showing of the property for Sunday, May 29, 1994, during Memorial Day weekend.

(6) Ward spent this weekend on his boat in Maryland. Before leaving for Maryland, he notified Torchia of his intended whereabouts and provided a telephone number at which he could be reached in Maryland.

(7) In accordance with common practice among real estate brokers, a key to the property was kept in a lockbox at the property with the combination to the lockbox controlled by the real estate broker, in this case Torchia.

(8) On Thursday, May 26, 1994, Torchia authorized another person to enter the property and provided that person with the lockbox combination.

(9) Torchia claims that he has no record or recollection of the identity of the person he authorized to go through the property on May 26, 1994, and despite requests, he has failed to provide the identity of this person to Ward.

(10) The unidentified person who entered the property on May 26, 1994, turned on the hot tub and then left without turning it off.

(11) On Saturday, May 28, 1994, Alvin Brown, a real estate agent employed by Torchia, entered the premises to check on the property prior to the showing scheduled the following day.

(12) Brown discovered that the hot tub was still running, but he was unable to turn it off. He promptly informed Torchia of this problem by telephone that same day.

(13) Upon receiving the telephone information about the hot tub from Brown, Torchia telephoned Ward's Lehigh County residence, even though he knew Ward was then in Maryland for the weekend. Torchia left a voice mail message for Ward that the hot tub had been left on, that the basement was getting damp, and that he was afraid damage might occur. Torchia also stated that if he did not hear from Ward, he (Torchia) would make arrangements for the tub to be shut off.

(14) Ward did not learn of this message until Monday, May 30, 1994, when he called home to retrieve the messages on his answering machine.

(15) Torchia did not take any steps to arrange for the tub to be shut off on May 28, 1994, or at any other time.

(16) When Ward returned home on May 30, 1994, and inspected the property, he found that the basement had sustained considerable damage.

(17) The damage to the property, was in the amount of $34,613.61.[1]

(18) Some of the damages may have occurred between May 26, 1994, and May 28, 1994.

(19) Ward was unable to reach Torchia until Wednesday, June 1, 1994, at which time Torchia claimed he did not know the identity of the person who had entered the property on May 26, 1994, and had no record of this person.

(20) As a result, Ward has been unable to ascertain the identity of the person who entered the property on May 26, 1994, and left without turning off the hot tub.

## CONCLUSIONS OF LAW

(1) The unidentified individual who turned on the hot tub on May 26, 1994, and left the property without turning it off, was negligent.

(2) From Torchia's failure to identify that person, either through his business records or from his recollection, we infer that the unidentified person was either an employee of Torchia or a person who was unsuitable to enter the property without supervision.

(3) Torchia is legally responsible for the negligent acts of this unidentified individual, either vicariously if the individual was an employee of Torchia, or by direct negligence if he allowed an unsuitable person to enter the property unsupervised.

(4) Torchia's aforesaid negligence was a substantial factor in causing damage to the property in the amount of $34,613.61.

---

1. The parties have stipulated to the amount of the damages.

(5) Torchia was also negligent in failing to maintain a record of the identity of the person whom he authorized to go through the property on May 26, 1994.

(6) Torchia's aforesaid negligence was a substantial factor in causing harm to Ward, in that Ward has been unable to pursue this person for the damage to the property in the amount of $34,613.61.

(7) Torchia was also negligent on May 28, 1994, after learning that the hot tub was still on (a) in leaving a voice mail message regarding this problem at Ward's home in Lehigh County when Torchia knew that Ward was away that weekend in Maryland; and (b) in failing to take appropriate steps to arrange for the hot tub to be turned off when he did not hear back from Ward that same day.

(8) Torchia's aforesaid negligence on May 28, 1994, caused substantial damage to Ward's property.

(9) Since Torchia's agent, Alvin Brown, was the only person to enter the property on May 28, 1994, and Brown and Torchia were the only persons with knowledge on that date that the property may have been damaged, proof of the extent of damage existing as of May 28, 1994, if any, was within the exclusive control of Torchia and his agent, Brown. Therefore, Torchia has the burden of proving the extent of the damage that occurred on or before that date.

(10) Although some of the damage to the property may have occurred prior to May 28, 1994, Torchia has failed to prove the amount of damages, if any, that occurred prior to this date. Therefore, he is liable to Ward for the entire damages of $34,613.61.

(11) Ward is not guilty of contributory negligence in causing the aforesaid damage.

(12) Judgment shall be entered in favor of Ward against Torchia in the amount of $34,613.61.[2]

## DISCUSSION

The unusual set of facts in this case raises some interesting legal issues. Torchia does not dispute the amount of the damage to the property or that this damage resulted from the failure to turn off the hot tub that had been turned on on May 26, 1994. Nor does Torchia deny that he failed to take appropriate steps on May 28, 1994, upon discovery of the problem, to notify Ward or to make arrangements to turn off the hot tub. Instead Torchia argues that he is not responsible for the actions of the unidentified person who entered the property on May 26, 1994; and that since some of the damages had already occurred prior to May 28, 1994, Ward cannot prove the amount of damages from Torchia's inaction on that date.

Torchia's argument is clever, but in the final analysis unconvincing. We believe there are three separate bases on which Torchia is liable to Ward.

### *First Basis of Liability*

A cause of action for negligence, requires (a) the existence of a legal duty, (b) a breach of that duty, (c) damages, and (d) a causal connection between the breach of duty and the damages incurred. *Martin v. Evans,* 551 Pa. 496, 711 A.2d 458 (1998); *Filter v. McCabe,* 733 A.2d 1274 (Pa. Super. 1999). There can be no question but

---

2. The parties have stipulated that any judgment in this case is to be entered in favor of the individual plaintiff, Edmond Ward, only. The claim of Erie Insurance Exchange as subrogee is withdrawn.

that the individual who turned on the hot tub on May 26, 1994, and left the premises without turning it off was negligent. We believe that Torchia's failure to identify this individual creates an inference that disclosure of the identity of this person would be unfavorable to him. We find it incredible that a week after authorizing an individual to enter the premises, Torchia could not recall the indentity of that individual. His failure to provide this information, either through his business records or from his personal recollection, justifies our conclusion that disclosure of the identity of this person would be unfavorable to him.

It is well established in Pennsylvania that a party cannot benefit by withholding or destroying evidence. Where this occurs, an adverse inference may be drawn against the party responsible for the withholding or spoliation of evidence. *Duquesne Light Co. v. Woodland Hills School District,* 700 A.2d 1038, 1050 (Pa. Commw. 1997), *allocatur denied,* 555 Pa. 722, 724 A.2d 936 (1998). As long ago as 1898 this principle was set forth by the Pennsylvania Supreme Court in *McHugh v. McHugh,* 186 Pa. 197, 201, 40 A. 410, 411 (1898) as follows:

"The spoliation of papers and the destruction or withholding of evidence which a party ought to produce gives rise to a presumption unfavorable to him, as his conduct may properly be attributed to his supposed knowledge that the truth would operate against him. This principle has been applied in a great variety of cases, and is now so well established that it is unnecessary to do more than state it."

In the instant case we infer from Torchia's failure to disclose the identity of the person who entered Ward's

home on May 26, 1994, that this person was either an employee of Torchia, for whose negligent acts Torchia would be vicariously liable, or was a person not suitable to enter the home without supervision. Under either scenario, Torchia is liable for the damage caused to Ward's property by the negligent acts of that individual.

## Second Basis of Liability

A real estate listing agent is an agent of the homeowner and, like any other agent, owes a fiduciary duty to his principal with respect to matters within the scope of his agency. See Restatement (Second) of Agency §13 (1957) ("An agent is a fiduciary with respect to matters within the scope of his agency."). In exercising his agency authority to show the house to potential purchasers and other agents, the listing agent has a duty to use reasonable care to prevent damage to the property from these activities. In fulfilling this fiduciary obligation, a very basic duty of a listing agent is to keep a record of those persons he has authorized to enter the property, so that in the event damage occurs, the person causing that damage can be held responsible.

"Unless otherwise agreed, an agent is subject to a duty to use reasonable effort to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person." Restatement (Second) of Agency §381 (1957), quoted with approval in *Merrill Lynch, Pierce, Fenner & Smith v. Perelle,* 356 Pa. Super. 65, 183, 514 A.2d 552, 561 (1986).

In this case, Torchia clearly breached his fiduciary duty by failing to keep a written record of the person author-

ized to enter the home on May 26, 1994, and by failing to recall the identity of this person a week later. At trial Torchia testified that he thought it might be someone associated with the Patt, White Agency, a very respectable real estate firm in the Lehigh Valley. However, we find this disclosure at trial in May 2000, very suspicious. Torchia was unable to provide any information six years ago shortly after the incident. Since Torchia failed to provide Ward with any information about the identity of the person back in 1994, and since there were then operating in the Lehigh Valley literally hundreds of real estate agents, it is understandable that Ward has been unable to ascertain the identity of the person who entered the property on May 26, 1994. Because of this inability, Ward could not bring legal action against that person to recover for the damage to the property.

We are aware that in *Caldwell v. City of Philadelphia,* 358 Pa. Super. 406, 517 A.2d 1296 (1986), *allocatur denied,* 517 Pa. 597, 535 A.2d 1056 (1987), the Pennsylvania Superior Court refused to sanction a suit by a pedestrian against the City of Philadelphia for injuries in a motor vehicle accident based on the theory that the police had failed to identify the driver before he left the scene. The difference between that case, however, and the instant case is that under Pennsylvania law[3] the police do not have a duty to potential tort claimants to identify motor vehicle operators, whereas a real estate bro-

---

3. For a contrary decision, see *Clemente v. State,* 40 Cal.3d 202, 707 P.2d 818, 219 Cal. Rptr. 445 (1985) (holding that state could be sued when highway patrol officer allowed a motorcyclist who had struck a pedestrian to leave the scene without obtaining his identity).

ker does have a clear duty to the property owner under principles of agency law.

This case is analogous to the spoliation cases where the destruction of evidence has affected adversely the right of a party to proceed with legal action. In *Schroeder v. PennDOT,* 551 Pa. 243, 710 A.2d 23 (1998), the Pennsylvania Supreme Court adopted the three-part test enunciated by the Third Circuit Court of Appeals in *Schmid v. Milwaukee Electric Tool Corp.,* 13 F.3d 76 (3d Cir. 1994), where spoliation of evidence is asserted. In determining the proper penalty, the court is to consider the following: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct." *Schroeder,* 551 Pa. at 250, 710 A.2d at 27, accord *Pia v. Perrotti,* 718 A.2d 321 (Pa. Super. 1998), *allocatur denied,* 558 Pa. 621, 737 A.2d 743 (1999). We believe these same factors should be considered here where Torchia has failed to produce a record or provide a recollection of the identity of the person he authorized to enter the property. The failure to provide this evidence is clearly Torchia's fault; the prejudice to Ward is severe; and there is no lesser sanction than the imposition of liability that will protect Ward's interest and deter similar conduct in the future.

## Third Basis of Liability

On May 28, 1994, upon learning of the running hot tub, Torchia understood that he had a duty to take steps to remedy this problem. However, the steps that he took

were obviously inadequate. He made one phone call to Ward at his Lehigh County home, even though he knew that Ward was away for the weekend in Maryland. Ward had given Torchia his Maryland telephone number. Moreover, in the voice mail message that Torchia left at Ward's Lehigh County home, Torchia said he would take care of the problem if Ward did not get back to him. Since Ward did not call him back immediately, Torchia should have made arrangements for someone to enter the property and turn off the hot tub. He did not do so. Clearly, Torchia's inaction on May 28, 1994, was a failure to use due care in fulfilling his duties as listing agent.

Torchia attempts to evade liability by claiming that some of the stipulated damages of $34,613.61 may have already occurred on May 26 and May 27. He relies on testimony by Alvin Brown, who six years later recalls vaguely that when he entered the property on May 28, 1994, the walls and ceiling tiles were wet and doors were not closing properly. Significantly, Brown was never asked by Torchia in 1994 about any such damage, and Brown's recollection six years after the fact is suspect. At trial he testified that he could not even remember if the tub was on or if he tried to turn it off himself on May 28, 1994.

Torchia argues that the damage to the property was caused by the unidentified person who was given access to the property on May 26, 1994, and that Ward cannot recover against Torchia unless Ward can prove the extent of the damages that occurred on or after May 28, 1994. However, Pennsylvania's rules on "apportionment of damages are consistent with those expressed in the Restatement (Second) of Torts . . . ." *Martin v. Owens-Corning Fiberglas Corp.*, 515 Pa. 377, 381, 528 A.2d

947, 949 (1987) (applying Restatement (Second) of Torts §§433A-434). Ordinarily, a plaintiff has the burden of proving a causal connection between the damages sustained and the negligent action or inaction of the defendant. However, "[w]here the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

Restatement (Second) of Torts §433B(2) (1965). The commentary to this rule states:

"The reason for the exceptional rule placing the burden of proof as to apportionment upon the defendant or defendants is the injustice of allowing a proved wrongdoer who has in fact caused harm to the plaintiff to escape liability merely because the harm which he has inflicted has combined with similar harm inflicted by other wrongdoers, and the nature of the harm itself has made it necessary that evidence be produced before it can be apportioned. In such a case the defendant may justly be required to assume the burden of producing that evidence, or if he is not able to do so, of bearing the full responsibility. *As between the proved tortfeasor who has clearly caused some harm, and the entirely innocent plaintiff, any hardship due to lack of evidence as to the extent of the harm caused should fall upon the former.*" Restatement (Second) of Torts §433B cmt. d (1965). (emphasis added) Whether all potential tort-feasors are included in the pending action is "immaterial." See Restatement (Second) of Torts §433A cmt. a (1965).

This rule is especially applicable where, as here, the ability to obtain information about the cause of the dam-

ages was within the exclusive knowledge and control of the defendant. Since Ward did not learn of the problem until Monday, May 30, 1994, it was impossible for him to inspect the property on May 28, 1994. On the other hand, Torchia's agent, Brown, was actually at the premises on May 28, 1994, and apprised Torchia then of the problem. Therefore, if the damage award is to be reduced on the theory that some of the damage had already occurred by May 28, it was incumbent upon Torchia to produce evidence on that issue. We find that Torchia has not produced any credible evidence that would enable us to quantify the damage that may have existed already on May 28, 1994. Therefore, we decline to reduce the figure stipulated to by the parties as the amount of the total damage to the property.

Finally, we have not found Torchia negligent for failing to inspect the property on May 26, 1994, after the unidentified individual had left the property. It may well be that a real estate listing agent has a duty to make such an inspection to check whether any damage has been done. However, such a finding would require expert testimony from a real estate professional as to the standard of care in this situation. Absent such expert testimony, we do not believe we can find Torchia negligent for failing to inspect the property on May 26, 1994. However, with respect to the three alternative bases on which we have found Torchia liable, expert evidence as to the standard of care is not required. A listing agent's responsibility to keep a record of persons authorized by him to enter the premises and his obligation to take reasonable steps to protect the property upon learning that such a person has created a risk of harm are manifestly clear and obvious. Expert testimony is not required to estab-

lish a deviation from the standard of care "where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even nonprofessional persons." *Chandler v. Cook,* 438 Pa. 447, 451 n.1, 265 A.2d 794, 796 n.1 (1970), quoted with approval in *Welsh v. Bulger,* 548 Pa. 504, 513 n.11, 698 A.2d 581, 585 n.11 (1997) and *Matthews v. Clarion Hospital,* 742 A.2d 1111, 1112 (Pa. Super. 1999).

For all the foregoing reasons, we find that judgment should be entered in favor of Ward against Torchia for the sum of $34,613.61.

### ORDER

Now, June 6, 2000, after trial without jury, based on the findings of fact and conclusions of law set forth in the accompanying decision, it is ordered that judgment be entered in favor of plaintiff, Edmond Ward, against defendant, Jasper A. Torchia, in the amount of $34,613.61.