J-A29044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ELVIN W. JENKINS, II AND | : | IN THE SUPERIOR COURT OF |
| MARY ANN JENKINS, HIS WIFE | : | PENNSYLVANIA |
| | : | |
| Appellants | : | |
| v. | : | |
| | : | |
| JOHN R. KRIVOSH, MARY FRANCES | : | |
| VENN AND HERON'S LANDING, LLC | : | |
| T/D/B/A OLDE STONEWALL GOLF CLUB | : | |
| | : | |
| Appellees | : | No. 2045 WDA 2014 |

Appeal from the Order July 17, 2014
in the Court of Common Pleas of Lawrence County,
Civil Division, No. 11212 of 2012 C.A.

BEFORE:  FORD ELLIOTT, P.J.E., BOWES and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED DECEMBER 23, 2015**

Elvin W. Jenkins, II ("Elvin"), and his wife, Mary Ann Jenkins (collectively "the Jenkinses"), appeal the Order granting summary judgment in favor of Heron's Landing, LLC t/d/b/a Olde Stonewall Golf Club (hereinafter "Heron's Landing").[1]  We reverse the Order entered in favor of Heron's Landing, and remand for further proceedings.

In its Opinion, the trial court set forth the relevant factual and procedural background, as follows:

On December 31, 2011, [] Krivosh left his residence at approximately 8:00 a.m. and traveled with friends to search for campsites in Tidioute, Pennsylvania.  They stopped for lunch at approximately 12:00 noon and [] Krivosh drank one beer.  He eventually returned home at approximately 4:00 p.m.  [] Krivosh

---

[1] Defendants, John R. Krivosh ("Krivosh") and Mary Frances Venn ("Venn"), are not parties to this appeal.

then made arrangements to meet [] Venn at [Heron's Landing] for drinks. Prior to going to [Heron's Landing], [] Krivosh drank two "gulps" of vodka directly from the bottle, which he estimated was approximately eight ounces. He then placed the vodka bottle in his vehicle[,] as he intended on consuming more of it later to celebrate New Year's Eve.

[] Venn arrived at [Heron's Landing] first[,] between 6:00 and 6:30 p.m. She ordered a vodka tonic with a twist of lime. Shortly thereafter, [] Krivosh arrived and ordered himself and [] Venn a vodka tonic. They were seated at the bar among 10 to 15 other patrons[,] and began conversing when [] Krivosh informed [] Venn that he was terminating their relationship. [] Krivosh consumed his drink and ordered another vodka tonic. He drank half of the second vodka tonic before departing [Heron's Landing].

[] Krivosh left [Heron's Landing] first[,] and was followed by [] Venn. Both individuals drove separately in their own vehicles, but [] Venn followed [] Krivosh as, according to her deposition testimony, she did not know the route to return home. They eventually arrived at a traffic light. Once the light changed to green, [] Krivosh sped away[,] and [] Venn temporarily lost sight of his vehicle. As [] Krivosh was driving outside of [] Venn's view, [] Krivosh attempted to navigate a curve in the road, [] crossed into the other lane of the roadway and struck a vehicle operated by [] Elvin [], who was severely injured. [] Venn approached the site of the accident[,] and [] parked her vehicle behind [] Krivosh's truck.

After the collision, [] Krivosh exited his vehicle and approached the [Jenkinses'] vehicle[,] where he noticed that the driver, [Elvin], was trapped. [] Krivosh returned to his vehicle and disposed of the vodka bottle by throwing it over the hillside. Michael Paul Allen ["Allen"] observed [] Krivosh throw the vodka bottle over the hill[,] and stated in his affidavit that [] Krivosh could not walk straight. [Allen] also explained that [] Krivosh had to hold onto his truck to stand up, his speech was slurred, his eyes were bloodshot and glassy, and he was obviously intoxicated.

Patrolman Jon W. Disher ["Officer Disher"] of the Ellwood City Police Department testified in his deposition that he responded to a communication informing him of an automobile

accident[,] and he arrived on the scene of the accident at 7:42 p.m. Upon arrival, Officer Disher observed [] Krivosh leaning on his vehicle in an attempt to balance himself. [Officer Disher] approached [] Krivosh and he observed that [] Krivosh had glassy, bloodshot eyes, he was swaying in a circular motion and he emanated an odor of alcohol. [Officer Disher] began speaking with [] Krivosh, who was attempting to keep his mouth closed in an effort to hide the odor of alcohol. [Officer Disher] questioned [] Krivosh concerning the bottle of alcohol that he threw over the hillside, which [] Krivosh denied. However, Officer Matthew Liberatore, also from the Ellwood City Police Department, recovered a vodka bottle after the hillside was illuminated by the local fire department. [] Krivosh insisted that he did not drink from the bottle [,] and only drank at [Heron's Landing].

At that time, Officer Disher administered field sobriety tests to [] Krivosh. The first field sobriety test administered was the horizontal gaze nystagmus, which consists of the police officer holding a pen in front of the potentially intoxicated person and moving it to the right and left side. Upon performing the test, [] Krivosh's eyes did not track the pen and jumped from one position to the other, which indicated that he had a blood alcohol content ["BAC"] over [0].10[%]. Next, Officer Disher administered the walk and turn test, in which [] Krivosh was instructed to walk nine steps forward with his heel placed just in front of the toes of his opposite foot, turn around and then walk nine more steps in that manner. [] Krivosh failed on the first nine steps and had one misstep on the second nine steps. According to the police report, Officer Disher also administered a portable breath test, which indicated that [] Krivosh's [BAC] was [0].09[%]. Officer Disher then placed [] Krivosh under arrest and transported him to Ellwood City hospital to undergo a blood test to determine his [BAC], which revealed that he had a [BAC] of 0.154[%]. Officer Disher testified that, upon first approaching [] Krivosh, it was apparent to any reasonable person that he was intoxicated.

Trial Court Opinion, 2/10/15, at 3-7 (footnote omitted, paragraph spacing added).

On October 16, 2012, the Jenkinses commenced this action by filing a Complaint, wherein they asserted claims against Heron's Landing based on its alleged violation of the Dram Shop Act, 47 P.S. § 4-493.[2] On January 17, 2014, Heron's Landing filed a Motion for summary judgment. On July 16, 2014, the trial court granted Heron's Landing's Motion for summary judgment. The Jenkinses filed a timely Notice of Appeal and a court-ordered Statement of Errors Complained of on Appeal.

On appeal, the Jenkinses raise the following issues for our review:

1. Whether the trial court erred in disregarding substantial circumstantial evidence that [] Krivosh was visibly intoxicated at the time he was served alcoholic beverages at [] Heron's Landing[?]

2. Whether the trial court failed to weigh the evidence of record in the light most favorable to the non-moving party[?]

3. Did the trial court err in relying upon the oral testimony of co-defendants [] Krivosh, [] Venn, and Heron's Landing [] employee, Dale Thompson ["Thompson"], in deciding [Heron's Landing's] Motion for summary judgment[,] when a jury would be free to disregard any such testimony?

Brief for Appellants at 5 (capitalization omitted, issues renumbered for ease of disposition).

_____

[2] The Pennsylvania Dram Shop Act provides, in pertinent part, that it shall be unlawful

> [f]or any licensee or the board, or any employee, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated….

47 P.S. § 4-493(1).

Our standard of review of an order granting a motion for summary judgment is well-established:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1179 (Pa. 2012) (citation omitted).

Because the Jenkinses' first two issues are related, we will address them together. The Jenkinses contend that, under Pennsylvania law, they may establish a facility owner's violation of the Dram Shop Act by circumstantial evidence that a patron was visibly intoxicated when he was served alcoholic beverages by the facility owner. Brief for Appellants at 22 (citing *Fandozzi v. Kelly Hotel, Inc.*, 711 A.2d 524 (Pa. Super. 1998)). The Jenkinses assert that they have produced substantial circumstantial evidence that Krivosh was visibly intoxicated when Heron's Landing served him alcoholic beverages. Brief for Appellants at 24. In support, the Jenkinses point to Krivosh's testimony that he had consumed at least eight ounces of vodka prior to his arrival at Heron's Landing, and then consumed a vodka tonic at Heron's Landing prior to purchasing, and being served, his final alcoholic beverage at Heron's Landing. *Id*. The Jenkinses also point to

the report of Karl E. Williams, M.D., M.P.H. ("Dr. Williams"), from which it could be inferred that Krivosh had consumed eight to nine drinks, and had a BAC level of 0.172% at the time he left Heron's Landing. *Id*.

The Jenkinses further claim that Krivosh's high level of intoxication, at the time he was served alcoholic beverages at Heron's Landing, is evidenced by events that occurred shortly after he left the facility. *Id*. at 25. In support, the Jenkinses point to (1) Venn's testimony that she observed Krivosh accelerate to a high level of speed after he had stopped at a red light; (2) Allen's statements that he had observed Krivosh traveling at a high rate of speed through a turn in the road, causing his vehicle to travel sideways and strike a mailbox located in Allen's front yard; (3) the statements of Allen and Officer Disher that, following the accident, Krivosh displayed obvious signs of intoxication, including leaning across the hood of his vehicle trying to balance himself, holding onto the back of his vehicle, staggering and swaying, having glossed over and bloodshot eyes, having slurred speech and smelling of alcohol; (4) Krivosh's failure of field sobriety tests administered by Officer Disher; and (5) the results of Krivosh's blood alcohol test after the accident, which established his BAC at 0.154%. *Id*.

The Jenkinses assert that the trial court failed to weigh the evidence of record in the light most favorable to them, as the non-moving party, when considering Heron's Landing's Motion for summary judgment. *Id*. at 26. In particular, the Jenkinses point to Dr. Williams's report, and claim that the

- 6 -

trial court failed to consider the alcohol consumption levels indicated therein, and instead concluded, in a light most favorable to Heron's Landing as the moving party, that Krivosh had consumed a lesser amount. *Id*. at 26-27. According to the Jenkinses, had the trial court properly considered the evidence in a light most favorable to them, as it was required to do, the evidence was sufficient to raise a question of material fact regarding Krivosh's level of intoxication while inside Heron's Landing, requiring submission of the case to the jury. *Id*.[3]

In order to establish liability under the Dram Shop Act, it is not sufficient for a plaintiff to establish merely that alcoholic beverages were served to a patron, or that the patron was intoxicated at the time he caused injury to another. *See Fandozzi*, 711 A.2d at 527. Rather, for dram shop liability to attach, evidence must be produced indicating that the patron was served alcohol at a time when he was visibly intoxicated. *Id.*; 47 P.S. § 4-493(1). To meet this standard, a plaintiff need not offer direct evidence regarding the patron's visible intoxication. *See Fandozzi*, 711 A.2d at 527. Rather, a plaintiff can prove dram shop liability through circumstantial evidence that an individual was served alcohol at a time when he was visibly

---

[3] The Jenkinses also argue that Heron's Landing spoliated evidence relevant to their claim, including videotape footage and cash receipts. Brief for Appellants at 27. The Jenkinses contend that they were entitled to an inference that that the contents of the videotape and the cash receipts would have been unfavorable to Heron's Landing. *Id*. However, based on our conclusion, *infra*, that the circumstantial evidence presented by the Jenkinses is sufficient to raise a question of material fact, we need not address this issue.

intoxicated. *Id*. Accordingly, we examine the Jenkinses' circumstantial evidence of Krivosh's level of intoxication when he was at Heron's Landing.

As noted by the trial court, the Jenkinses presented evidence that Krivosh was at Heron's Landing for approximately one hour.[4] Krivosh had consumed some amount of alcohol prior to arriving at Heron's Landing,[5] but drank only one and a half drinks while he was at Heron's Landing.[6] Krivosh stated that he drank no alcohol after leaving Heron's Landing. *See* Trial Court Opinion, 2/10/15, at 5. An inference exists that the accident occurred approximately ten minutes after Krivosh left Heron's Landing. *See id*. at 20 n.5 (indicating that Officer Disher testified that the drive from Heron's Landing to the accident scene takes approximately ten minutes). Following the accident, Officer Disher and Allen observed Krivosh in an extremely intoxicated condition. Specifically, they observed Krivosh staggering and swaying in a circular motion, leaning on his vehicle in an effort to balance himself, slurring his speech, smelling of alcohol and displaying glassy,

---

[4] Venn testified that she arrived at Heron's Landing between 6:00 p.m. and 6:30 p.m., and that Krivosh arrived soon thereafter. *See* Trial Court Opinion, 2/10/15, at 4. Officer Disher arrived at the accident scene shortly after the accident occurred, at approximately 7:42 p.m. *See id*. at 5.

[5] Krivosh stated that he drank two large gulps from a vodka bottle prior to going to Heron's Landing, which he estimated to be approximately eight ounces. *See* Trial Court Opinion, 2/10/15, at 4.

[6] *See* Trial Court Opinion, 2/10/15, at 4.

bloodshot eyes. *See id*. at 5. Krivosh also failed three field sobriety tests administered by Officer Disher following the accident. *See id*. at 5-6.

The Jenkinses also submitted the expert report of Dr. Williams to explain how Krivosh could have consumed enough alcohol to register a BAC of 0.154% approximately one hour after leaving Heron's Landing.[7] Dr. Williams's report indicates, through use of relation-back extrapolation methods, that Krivosh's BAC would have been even higher (0.172%) when he left Heron's Landing. According to Dr. Williams, Krivosh's BAC level indicates that eight to nine alcoholic drinks were present in his blood stream at the time of the accident.[8]

This Court has refused to find a question of material fact with respect to visible intoxication *solely* on the basis of expert relation-back testimony. *See Fandozzi*, 711 A.2d at 528. However, a question of material fact may be created when an expert's relation-back conclusions are supported by additional circumstantial evidence indicating that the patron may have been visibly intoxicated while he was in the establishment in question. *See id*.

Given Krivosh's visibly intoxicated condition shortly after leaving Heron's Landing, and his BAC of 0.154% approximately one hour after leaving Heron's Landing, a jury could reasonably infer that Krivosh was

---

[7] The Jenkinses presented evidence that Krivosh's BAC was measured at 8:35 p.m. *See* Dr. William's Expert Report, 5/13/14, at 2.

[8] Any dispute with respect to Dr. Williams's method of calculation, or the conclusions drawn from his calculations, would go to the weight to be accorded his testimony. *See Fandozzi*, 711 A.2d at 528.

exhibiting visible signs of intoxication when he was inside Heron's Landing, even in the absence of Dr. Williams's report. **See Fandozzi**, 711 A.2d at 529. Thus, we conclude that the Jenkinses have raised a question of material fact as to whether Krivosh was visibly intoxicated at the time he was served alcoholic beverages at Heron's Landing, and this issue should have been submitted to the jury. Accordingly, the trial court erred by granting summary judgment in favor of Heron's Landing.

Based on our disposition as to the Jenkinses' first two issues, we need not address their final issue.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2015

- 10 -

ELVIN W. JENKINS, II and MARY ANNA JENKINS,

        Plaintiffs,

vs.

JOHN R. KRIVOSH, MARY FRANCES VENN and HERON'S LANDING, LLC, t/d/b/a OLDE STONEWALL GOLF CLUB,

        Defendants.

: IN THE COURT OF COMMON PLEAS

: LAWRENCE COUNTY, PENNSYLVANIA

: CIVIL DIVISION

: NO. 11212 OF 2012

:

:

:

:

:

:

**APPEARANCES**

For the Plaintiffs:

Phillip L. Clark, Esq.
Leymarie Clark Long, P.C.
Suite 8, 2nd Floor
1429 New Butler Road
New Castle, PA 16101

For the Defendant Heron's
Landing, LLC t/d/b/a Olde
Stonewall Golf Club:

Phillip J. Sbrolla, Esq.
Cipriani & Werner, P.C.
650 Washington Road, Suite 700
Pittsburgh, PA 15228

FILED/ORIGINAL 2015 FEB 10 A 10: 20 HELEN T. MORGAN PRO AND CLERK

**OPINION**

COX, J.

February 10, 2015

In the instant matter, the Plaintiffs have filed a Notice of Appeal on December 16, 2014,[1] arising from this Court's Order and Opinion dated July 16, 2014, in which the

---

[1] The Plaintiffs' Notice of Appeal is timely as it was filed the day after a Praecipe To Settle And Discontinue As To Defendants John R. Krivosh and Mary Frances Venn and the Court granted defendant Heron's Landing, LLC t/d/b/a Olde Stonewall Golf Club's Motion For Summary Judgment in its July 16, 2014, Order of Court, which dismissed the Plaintiffs' claims against Defendant Heron's Landing. The issues in the current appeal are now ripe for appellate review.

53RD
JUDICIAL
DISTRICT

LWRENCE COUNTY
PENNSYLVANIA

Court dismissed the Plaintiffs' claims against the defendant Heron's Landing, LLC, t/d/b/a Olde Stonewall Golf Club (hereinafter "Heron's Landing"). On January 13, 2015, the Plaintiffs filed their Statement Of Errors Complained Of On Appeal, asserting that the Court committed the following errors:

I.  The Court erred in relying upon the testimony of John R. Krivosh, Mary Frances Venn and an employee of Heron's Landing Dale Thomson in deciding to grant summary judgment where a jury would be permitted to disregard such testimony;

II.  The Court failed to distinguish the current case from the Superior Court's decisions in Johnson v. Harris, 419 Pa. Super. 541, 615 A.2d 771 (1992) and Conner v. Duffy, 438 Pa. Super. 277, 652 A.2d 372 (1994);

III.  The Court failed to consider the record in the light most favorable to the non-moving party;

IV.  The Court erred by disregarding substantial circumstantial evidence that John R. Krivosh was visibly intoxicated at the time he was served alcoholic beverages at Shakespeare's Restaurant;

V.  The Court erred in failing to consider circumstantial evidence that, ten minutes after leaving the facility owned by Heron's Landing, Defendant Krivosh could not walk straight, had to hold onto his truck to stand, had slurred speech, bloodshot and glassy eyes and appeared obviously intoxicated to Michael Paul Allen;

VI.  The Court failed to consider circumstantial evidence that Officer Disher observed Mr. Krivosh leaning on his vehicle in an attempt to balance himself, he had glassy, bloodshot eyes and he was swaying in a circular motion;

VII.  The Court erred in failing to consider the circumstantial evidence that Officer Disher testified that it would be apparent to any reasonable person that Mr. Krivosh was intoxicated ten minutes after leaving Shakespeare's Restaurant;

VIII.  The Court ignored the law concerning summary judgment when it decided to accept the testimony of Mr. Krivosh that he drank eight ounces of alcohol prior to going to Shakespeare's Restaurant when there is evidence that he could have consumed 16 ounces of alcohol at that time;

IX.  The Court erred in acknowledging that a plaintiff can prove that an establishment served alcohol to a visibly intoxicated person through circumstantial evidence and then proceeding to ignore that law;

53RD
JUDICIAL
DISTRICT

WRENCE COUNTY
PENNSYLVANIA

2

X.      The Court failed to follow the Superior Court's decision in <u>Fandozzi v. Kelly Hotel, Inc.</u>, 711 A.2d 524 (Pa. Super. 1998);

XI.     The Court erred in failing to find that the expert report provided by the Plaintiffs was supported by the circumstantial evidence creating an issue of material fact;

XII.    The Court failed to consider the circumstantial evidence of the spoliation of evidence by Heron's Landing as it relates to the destruction of the videotape and the cash receipts;

XIII.   The Court failed to consider the circumstantial evidence of Defendant Heron's Landing's violation of Pennsylvania Liquor Laws in general;

XIV.    The Court erred in weighing the evidence to determine that Mr. Krivosh consumed eight ounces of vodka prior to being served at Shakespeare's Restaurant when there was circumstantial evidence to suggest that Mr. Krivosh consumed considerably more vodka than that;

XV.     The Court erred in concluding that the record was devoid of any reference that Mr. Krivosh was unable to control his vehicle when Michael Paul Allen provided an Affidavit that just prior to the accident Mr. Krivosh's vehicle was traveling at an extremely high rate of speed and was traveling sideways. Mr. Allen's Affidavit further provided that Mr. Krivosh's pickup truck slammed into Mr. Allen's mailbox as it was sliding sideways. Mr. Allen's Affidavit further provided that the pickup truck continued to slide sideways for about 100 feet and hit a guardrail on the south side of Wampum Avenue and that when the pickup truck hit the guardrail, it spun counterclockwise and then hit the vehicle driven by Elvin Jenkins in Mr. Jenkin's lane of travel, head on;

XVI.    The Court erred in suggesting that Mr. Kirovsh's intoxicated appearance approximately ten minutes after leaving Shakespeare's Restaurant was not circumstantially indicative of his appearance at Shakespeare's Restaurant; and

XVII.   The Court erred in finding that it is somehow important to note that Mr. Krivosh was able to throw a vodka bottle over a hill just after a high-speed collision.

On December 31, 2011, defendant John Krivosh left his residence at approximately 8:00 a.m. and traveled with friends to search for campsites in Tidioute, Pennsylvania. They stopped for lunch at approximately 12:00 noon and Defendant Krivosh drank one beer. He eventually returned home at approximately 4:00 p.m. Defendant Krivosh then made arrangements to meet defendant Mary Frances Venn at

Shakespeare's Restaurant & Pub (hereinafter "Shakespeare's Restaurant"), which is owned by Defendant Heron's Landing, for drinks. Prior to going to the restaurant, Defendant Krivosh drank two "gulps" of vodka directly from the bottle, which he estimated was approximately eight ounces. He then placed the vodka bottle in his vehicle as he intended on consuming more of it later to celebrate New Year's Eve. Defendant Venn arrived at Shakespeare's Restaurant first between 6:00 and 6:30 p.m. She ordered a vodka tonic with a twist of lime. Shortly thereafter, Defendant Krivosh arrived and ordered himself and Defendant Venn a vodka tonic. They were seated at the bar among 10 to 15 other patrons and began conversing when Defendant Krivosh informed Defendant Venn that he was terminating their relationship. Defendant Krivosh consumed his drink and ordered another vodka tonic. He drank half of the second vodka tonic before departing the restaurant. Defendant Krivosh left the restaurant first and was followed by Defendant Venn. Both individuals drove separately in their own vehicles[2], but Defendant Venn followed Defendant Krivosh as, according to her deposition testimony, she did not know the route to return home. They eventually arrived at a traffic light. Once the light changed to green, Defendant Krivosh sped away and Defendant Venn temporarily lost sight of his vehicle. As Defendant Krivosh was driving outside of Defendant Venn's view, Defendant Krivosh attempted to navigate a curve in the road, he crossed into the other lane of the roadway and struck a vehicle operated by plaintiff Elvin W. Jenkins, who was severely injured. Defendant Venn approached the site of the accident and she parked her vehicle behind Defendant Krivosh's truck. After the collision, Defendant Krivosh exited his vehicle and approached

---

[2] It must be noted that the vehicle being driven by Defendant Krivosh was registered in Defendant Venn's name.

4

the Plaintiffs' vehicle where he noticed that the driver, Mr. Jenkins, was trapped. Defendant Krivosh returned to his vehicle and disposed of the vodka bottle by throwing it over the hillside. Michael Paul Allen observed Defendant Krivosh throw the vodka bottle over the hill and stated in his affidavit that Defendant Krivosh could not walk straight. He also explained that Defendant Krivosh had to hold onto his truck to stand up, his speech was slurred, his eyes were bloodshot and glassy, and he was obviously intoxicated.

Patrolman Jon W. Disher of the Ellwood City Police Department testified in his deposition that he responded to a communication informing him of an automobile accident and he arrived on the scene of the accident at 7:42 p.m. Upon arrival, Officer Disher observed Defendant Krivosh leaning on his vehicle in an attempt to balance himself. The officer approached Defendant Krivosh and he observed that Defendant Krivosh had glassy, bloodshot eyes, he was swaying in a circular motion and he emanated an odor of alcohol. Officer Disher began speaking with Defendant Krivosh, who was attempting to keep his mouth closed in an effort to hide the odor of alcohol. The officer questioned Defendant Krivosh concerning the bottle of vodka that he threw over the hillside, which Defendant Krivosh denied. However, Officer Matthew Liberatore, also from the Ellwood City Police Department, recovered a vodka bottle after the hillside was illuminated by the local fire department. Defendant Krivosh insisted that he did not drink from the bottle and only drank at Shakespeare's Restaurant. At that time, Officer Disher administered field sobriety tests to Defendant Krivosh. The first field sobriety test administered was the horizontal gaze nystagmus, which consists of the police officer holding a pen in front of the potentially intoxicated person and moving it to the right and left side. Upon performing this test, Defendant Krivosh's eyes did not track the pen and

jumped from one position to the other, which indicated that he had a blood alcohol content over .10 percent. Next, Officer Disher administered the walk and turn test, in which Defendant Krivosh was instructed to walk nine steps forward with his heel placed just in front of the toes of his opposite foot, turn around and then walk nine more steps in that manner. Defendant Krivosh failed on the first nine steps and had one misstep on the second nine steps. According to the police report, Officer Disher also administered a portable breath test, which indicated that Defendant Krivosh's blood alcohol content was .09 percent. Officer Disher then placed Defendant Krivosh under arrest and transported him to Ellwood City Hospital to undergo a blood test to determine his blood alcohol content, which revealed that he had a blood alcohol content of 0.154 percent. Officer Disher testified that, upon first approaching Defendant Krivosh, it was apparent to any reasonable person that he was intoxicated.

On October 16, 2012, the Plaintiffs filed suit seeking damages against Defendant Krivosh, Defendant Venn and Defendant Heron's Landing. The claims against Defendant Heron's Landing are based upon alleged violations of the Dram Shop Act. On November 20, 2012, Defendants Krivosh and Venn filed Preliminary Objections To Complaint, which were overruled in part and sustained in part by Opinion and Order of Court issued by the Honorable Eugene E. Fike, Senior Judge, dated May 7, 2013. In the interim, Defendant Heron's Landing filed its Answer, New Matter and Crossclaims on February 28, 2013. The Plaintiffs then filed an Amended Complaint on May 14, 2013, to which Defendant Heron's Landing filed an Answer, New Matter And Crossclaim To The Plaintiffs' Amended Complaint on June 18, 2013. Eventually, Defendant Heron's Landing filed its Motion For Summary Judgment on January 17, 2014, which argued that

the Plaintiffs have failed to present evidence to create a question of fact that employees of Defendant Heron's Landing served alcohol to Defendant Krivosh when he was visibly intoxicated and the Plaintiffs should not be provided with additional time to procure a toxicology expert as that, by itself, is not sufficient evidence to permit the Plaintiffs' claim to survive summary judgment. The Plaintiffs have filed the expert report of Karl E. Williams, MD, MPH, on May 15, 2014, with their Brief In Answer To Defendant's Motion For Summary Judgment. Therefore, the Court no longer had to address that issue as the Plaintiffs did not need further time to procure an expert report. The Court, in its Order and Opinion dated July 16, 2014, granted Defendant Heron's Landing's Motion For Summary Judgment and dismissed all the claims against it as the Plaintiffs were unable to provide any evidence that the Defendant was visibly intoxicated when he was served alcohol at Shakespeare's Restaurant. The Plaintiffs have now appealed and asserted 17 errors concerning the Court's decision to grant summary judgment; however, all of those assertions pertain to whether the Plaintiffs have presented sufficient evidence to establish an issue of material fact regarding whether Mr. Krivosh was visibly intoxicated when he was served alcoholic beverages at Shakespeare's Restaurant. As such, the Court will address all of the issues contained in the Plaintiffs' Statement Of Errors Complained Of On Appeal as a whole.

The purpose of the Summary Judgment Rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. Miller v. Sacred Heart Hospital, 753 A.2d 829 (Pa. Super. 2000). The mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial. The summary judgment

53RD
JUDICIAL
DISTRICT

WRENCE COUNTY
'ENNSYLVANIA

7

rule exists to dispense with a trial of the case or, in some matters, issues in a case, where a party lacks the beginnings of evidence to establish or contest a material issue. Ertel v. Patriot-News Company, 544 Pa. 93, 674 A.2d 1038 (1996), reargument denied, (1996), certiorari denied, 519 U.S. 1008 (1996).

Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2. Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. Kafando v. Erie Ceramic Arts Co., 764 A.2d 59, 61 (Pa. Super. 2000) (citing Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 650-651 (Pa. Super. 1999). If the non-moving party does not respond, the trial court may grant summary judgment on that basis. Pa.R.C.P. No. 1035.2(d); *see also* Harber Philadelphia Center City Office Limited v. LPCI, L.T.D., 764 A.2d 1100 (Pa. Super. 2000).

When determining whether to grant a motion for summary judgment, the Court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Hughes v. Seven Springs Farm, Inc., 563 Pa. 501, 752 A.2d 339 (2000).

In passing on a motion for summary judgment, the court must examine the record in a light most favorable to the non-movant and resolve any doubt in his favor. Swartley v. Hoffner, 734 A.2d 915 (Pa. Super. 1999). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. P.J.S. v. Pennsylvania State Ethics Comm'n, 555 Pa. 149, 153, 723 A.2d 174, 175 (1999).

Only when the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. Basile v. H&R Block, *supra*. Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. Rauch v. Mike-Mayer, 783 A.2d 815 (Pa. Super. 2001). It is not the function of the Court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. Keenheel v. Pennsylvania Securities Commission, 143 Pa. Cmwlth. 494, 579 A.2d 1358 (1990).

The Plaintiffs' claims against Heron's Landing are based upon 47 P.S. §4-493(1), which states:

**It shall be unlawful—**

**(1) Furnishing liquor or malt or brewed beverages to certain persons.**
For any licensee or the board, or any employe[e], servant or agent of such licensee or of the board, or any other person, to sell furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person **visibly intoxicated**, or to any minor... (emphasis added).

In an action based upon a violation of the Dram Shop Act, the plaintiff is required to establish the following: "(1) that an employee or agent of [the defendant] served the [plaintiff] alcoholic beverages at a time when he [or she] was visibly intoxicated; and (2) that this violation of the statute proximately caused his [or her] injuries." Fandozzi v. Kelly Hotel, Inc., 711 A.2d 524, 525, 526 (Pa. Super. 1998) (citing Johnson v. Harris, 419 Pa. Super. 541, 548-550, 615 A.2d 771, 775 (1992)). A plaintiff can establish that an establishment served alcohol to a visibly intoxicated patron through circumstantial evidence in the absence of direct eyewitness evidence. Id., 711 A.2d at 526. A licensee will not be held liable based upon any consideration, such as blood alcohol content, that is not externally apparent as the law focuses on visible signs of intoxication. Laukemann v. Com., Pennsylvania Liquor Control Bd., 82 Pa. Cmwlth. 502, 506, 475 A.2d 955, 956-957 (1984). "The practical effect of the law is to insist that the licensee be governed by appearances, rather than by medical diagnosis." Id.

The Plaintiffs cite to Fandozzi for the proposition that visible intoxication can be proven in the absence of direct eye witness testimony. In Fandozzi, the decedent walked a distance of one mile from his hunting camp to the Kelly Hotel where the decedent began consuming alcoholic beverages. A bartender recalled serving him two alcoholic drinks prior to asking for him to pay a cover charge and another drink after speaking with him. The bartender did not recall what the decedent was drinking or the total number of drinks he consumed. The decedent then exited the Kelly Hotel where he was observed by three individuals either on the porch in front of the Kelly Hotel or on the adjacent road. One of those individuals was the co-owner of the Kelly Hotel, who was working the door. He said goodbye to the decedent and watched him walk across the

53RD JUDICIAL DISTRICT

WRENCE COUNTY PENNSYLVANIA

10

street where he fell to the ground. The co-owner attempted to help him up and noticed that the decedent was staggering and his speech was slurred; however, the co-owner did not notice those signs of intoxication prior to the fall. The co-owner then helped the decedent back to the front porch where the decedent slept for a while. He then attempted to walk, but fell again in the middle of the street. Another individual testified that she observed the decedent when he was leaving the Kelly Hotel at some time after 9:30 p.m. He seemed to be very intoxicated and was staggering before he fell in the middle of the street. She offered to drive the decedent home in a friend's vehicle. A teen-age boy, who was accompanying that individual, also observed the decedent stagger and fall in the street. He stated that the decedent smelled of alcohol and had slurred speech. The individual and the teenage-age boy were unable to understand the decedent when he explained where he lived due to his slurred speech and both stated he smelled of alcohol. The decedent was unable to identify exactly where he lived, so they left him at the entrance to a campground about a mile away from the Kelly Hotel. Early the next morning, state troopers found the decedent lying on the side of the road near the entrance of the campground. The troopers noticed that he had a head injury, was bleeding and demonstrated a high degree of intoxication. He was taken to the hospital where a blood test revealed that he had a blood alcohol content of 0.214 percent. The decedent died from the injury to his head. The appellants filed suit against the Kelly Hotel among other defendants. The trial court granted summary judgment in favor of the Kelly Hotel on the issue of liability under the Dram Shop Act. It must be noted that the appellants offered an expert report stating that the decedent's blood

alcohol content at the time he left the hotel would have been .30 percent and he would have displayed visible signs of intoxication while in the Kelly Hotel.

The Fandozzi Court initially stated that it is not enough to serve a patron alcoholic beverages, for civil liability to attach, there must be evidence that the patron was served alcohol when he or she was visibly intoxicated. Fandozzi, 711 A.2d at 527 (citing Holpp v. Fez, Inc., 440 Pa. Super. 512, 515-517, 656 A.2d 147, 149 (1995)). The Court also noted that the appellants have failed to produce any direct evidence that the decedent was visibly intoxicated at the time he was served alcohol, but there was sufficient circumstantial evidence to create a jury question on that issue. Id. The Fandozzi Court reasoned that the appellants presented circumstantial evidence that the decedent was visibly intoxicated, which included the decedent drank alcohol for two hours at the hotel, he was observed by three witnesses in an extremely intoxicated condition, either on the porch of the Kelly Hotel or in its close proximity on the adjacent street, he was stumbling, he fell twice on the street, had slurred speech, smelled of alcohol, he could not identify the location of his hunting camp and he fell asleep on the porch of the Kelly Hotel. Id. In addition, a blood alcohol test taken approximately six hours after the decedent left the hotel indicated that he had a blood alcohol content of 0.214 percent. The appellants also provided an expert report that stated the decedent's blood alcohol content would have been .30 percent when he was at the hotel and he would have demonstrated signs of visible intoxication. The Court explained that the medical testimony alone is insufficient to create an issue of material fact concerning visible intoxication. Id., 711 A.2d at 5289 (citing Johnson v. Harris, 419 Pa. Super. 541, 615 A.2d 771, 776 (1992)). The expert report in Fandozzi was supported by the circumstantial evidence creating an

issue of material fact, but the medical testimony by itself did not. Id. The Court reasoned, "Appellants have presented evidence that [decedent] drank more than the equivalent of fourteen twelve-ounce beers during the two hours he was at the Kelly Hotel; that immediately after he left, he was stumbling and falling to the ground, and could not identify where he lived; that he was still highly intoxicated when found by police more than four hours later; and that his blood alcohol content was 0.214 percent approximately six hours after leaving the Kelly Hotel." Id., 711 A.2d at 529. Therefore, the Fandozzi Court determined that the trial court improperly granted summary judgment in favor of Kelly Hotel as there was an issue of material fact concerning whether the decedent was visibly intoxicated at that time he was served alcohol at the hotel. Id., 711 A.2d at 529.[3]

The Plaintiffs also cite to Couts v. Ghion, 281 Pa. Super. 135, 421 A.2d 1184 (1980), which is a plurality decision of the Pennsylvania Superior Court.[4] In that case, Dean P. Ghion (hereinafter "Ghion") attended a business meeting hosted by a soft drink distributor, Refreshment Products, Inc., at a restaurant and motel operated by Holiday House, Inc. The attendees of the meeting, including Ghion, were furnished with alcohol. Ghion consumed eight alcoholic beverages at the meeting and ate lunch after the

---

[3] The Plaintiffs assert that this Court erred in failing to follow the Court's ruling in Fandozzi. That case is distinguishable from the current matter, as the decedent was observed by three individuals while on or near the Kelly Hotel premises and they noticed the decedent staggering, slurring his speech, he fell on two occasions in the street and he fell asleep on the porch of the Kelly Hotel. These observations were all in relation to the decedent attempting to leave the Kelly Hotel. In the current matter, the only testimony provided from Shakespeare's Restaurant is from Defendant Venn, who stated that Defendant Krivosh did not appear to visibly intoxicated while at the restaurant or when they were leaving. Hence, Fandozzi is distinguishable from the current case as the case contained testimony that the decedent was visibly intoxicated as he attempted to leave the Kelly Hotel and, in the current matter, the testimony indicates that Defendant Krivosh was not visibly intoxicated while inside of Shakespeare's Restaurant or upon leaving the same. The Plaintiffs merely presented testimony of Officer Disher and Mr. Allen concerning Defendant Krivosh's condition at the time of the accident and testimony concerning his blood alcohol content.

[4] The Pennsylvania Supreme Court has stated that plurality opinions do not have precedential value. Commonwealth v. Baldwin, 604 Pa. 34, 42, 985 A.2d 830, 835 (2009) (citing Kelley v. State Employees' Ret. Bd., 593 Pa. 487, 932 A.2d 61, 67-68 (2007)).

meeting concluded. At 5:00 p.m., Ghion went to a bar located elsewhere in the Holiday House restaurant where he drank two more alcoholic beverages. He finished the drinks at 5:15 p.m. and left the Holiday House, Inc. in his automobile. Ghion was then involved in an accident at 6:00 p.m. as he was driving on Route 30 North and his vehicle crossed the double yellow line. He was traveling in the westbound lanes when he struck a Toyota pickup. The driver of that vehicle died as a result of the collision. Within minutes, a police officer arrived to investigate the scene. He observed Ghion walking with a staggering gait and he detected a strong odor of alcohol. Ghion also fumbled through his wallet and dropped some cards when he was asked to provide his driver's license and registration. Additionally, Ghion's speech was slurred. The appellant not only filed suit against Ghion, but against Refreshment Products, Inc. and Holiday House, Inc. for serving Ghion alcohol when he was visibly intoxicated. The trial court granted summary judgment on behalf of Refreshment Products, Inc. and a compulsory nonsuit in favor of Holiday House, Inc. As a result, the appellant appealed to the Superior Court of Pennsylvania arguing that the trial court erred in entering judgment as there were issues of material fact concerning whether Ghion was visibly intoxicated when those parties served him alcohol.

The Court initially stated that Refreshment Products, Inc. could not be held liable under the Dram Shop Act as the Courts have refused to impose liability upon persons who are not licensed and engaged in the sale of intoxicants. Id., 281 Pa. Super. at 140, 421 A.2d 1187 (citing Manning v. Andy, 454 Pa. 237, 310 A.2d 75 (1973)). The Couts Court then focused its attention on Holiday House, Inc. The Court determined that the evidence presented was sufficient for that issue to be submitted to a jury. Id., 281 Pa.

53RD
JUDICIAL
DISTRICT

WRENCE COUNTY
PENNSYLVANIA

14

Super. at 142, 421 A.2d 1188. The appellants' evidence included testimony concerning Ghion's substantial alcohol consumption, his erratic driving, failing to utilize the lights on his vehicle, the appearance of intoxication noted by the police officer and improperly excluded evidence of his blood alcohol content. The Court stated, "Despite the lack of direct evidence bearing on Ghion's condition when he was served his last drink, we think that the jury could have reasonably concluded that he was visibly intoxicated at that time." Id. Therefore, the Couts Court affirmed the trial court's decision to enter summary judgment in favor of Refreshment Products, Inc. and reversed the trial court's entry of a compulsory nonsuit concerning Holiday House, Inc. Id.

Defendant Heron's Landing argues that this case more similarly resembles Johnson, 419 Pa. Super. 541, 615 A.2d 771. In that case, the appellants were involved in a one-vehicle automobile accident after frequenting several local drinking establishments with friends. The appellants argued that the drinking establishments violated the Dram Shop Act by serving the driver alcohol when she was visibly intoxicated. The driver picked up her passenger at approximately noon at his mother's residence where he resided. They went to the Chestnut Street Inn where they had three 12-ounce beers. At 1:00 p.m., the appellants walked to nearby Sunbury Eagles where they consumed several 16-ounce beers. They then watched a movie before driving to the Milton Eagles, which they soon left because it was crowded. Apparently, they went to the Milton American Legion where the passenger drank beer and gambled. The driver vaguely remembers consuming beer there as well. The appellants also stopped at the Halfway House; however, the appellants were not served alcohol there. They used the bathroom and left that establishment. Soon thereafter, the appellants were involved

in a one-vehicle accident. The appellants filed suit seeking damages against the drinking establishments that they visited for violations of the Dram Shop Act.

The appellees filed motions for summary judgment arguing that there was no evidence that the appellants were served alcohol while they were visibly intoxicated. The trial court granted those motions and noted that the only evidence that the appellants were visibly intoxicated came from the appellants' expert report stating that the driver's blood alcohol content would have been higher than .226 percent when she left the Halfway House and it would have been .07 percent when she began drinking at the Sunbury Eagles. According to that report, the driver's blood alcohol content would have exceeded .10 percent during the time when she was drinking at the Sunbury Eagles and would have exceeded .15 percent by the time they left that establishment. The expert also opined that a person with those blood alcohol contents would have shown visible signs of intoxication, including a decreased capacity for hearing resulting in speaking louder, decreased dexterity, diminished motor skills, compromised reaction time, slurred speech and sometimes bloodshot eyes. The trial court reasoned that the expert report was based upon the effects of alcohol on the average person and not personal observations of the appellants on the day in question. The appellants filed an appeal to the Superior Court of Pennsylvania asserting that there is a genuine issue of fact as to the driver being served while she was visibly intoxicated as she was served alcoholic beverages at all of the establishments and the expert report outlines the typical signs of intoxication the average person would have displayed given the driver's estimated blood alcohol content.

53RD
JUDICIAL
DISTRICT

WRENCE COUNTY
PENNSYLVANIA

16

The Johnson Court agreed with the trial court's ruling and explained that when examining whether a person is visibly intoxicated, the courts should place emphasis on what can be seen and not focus as much on blood alcohol content. Id., 419 Pa. Super. at 551, 615 A.2d at 776 (quoting Laukemann v. Com., Pennsylvania Liquor Control Bd., 82 Pa. Cmwlth. 502, 506, 475 A.2d 955, 956-957 (1984)).  The Court explained, "A review of the Record displays that there is nothing to indicate that [the driver] was served while visibly intoxicated at any of the drinking establishments.  Quite the contrary is true.  [The passenger] asserted in his deposition testimony that [the driver] was not visibly intoxicated the day of the accident." Id.  Moreover, the Court determined that the expert testimony did not create a question of fact as it is merely an attempt to relate back the blood alcohol content when the appellants were at certain establishments before the accident and it indicates the visible signs of intoxication that the average person would demonstrate. Id., 419 Pa. Super. at 552, 615 A.2d at 776.  However, there is no indication that the driver's reaction to alcohol ingestion would be the same as the average person's response. Id.  Thus, the appellants have failed to produce any witness to support their position, the trial court properly granted summary judgment. Id.

The Superior Court of Pennsylvania addressed a similar case to the current matter in Conner v. Duffy, 438 Pa. Super. 277, 652 A.2d 372 (1994).  In that case, the driver collided with the appellant while driving home from a Philadelphia Phillies baseball game hosted at Veteran's Stadium in Philadelphia, Pennsylvania.  The driver was arrested and charged with driving under the influence.  The appellant filed suit asserting claims of negligence against the concessionaire at the Stadium and the Philadelphia Phillies for serving the driver while he was visibly intoxicated.  The concessionaire and

the Philadelphia Phillies moved for summary judgment, which was granted by the trial court. The appellant filed an appeal to the Superior Court of Pennsylvania. The appellant offered the deposition testimony of one of the driver's friends who attended the baseball game. He stated that beer purchases were made at the stadium and the driver drove erratically when exiting the stadium. The arresting police officer also testified that the driver appeared to be intoxicated approximately one hour after the baseball game concluded. He exhibited slurred speech and blood shot eyes. The appellant contended that the results of the field sobriety tests, blood alcohol tests and "relation back" testimony by the appellant's expert demonstrated that the driver would have appeared intoxicated during the time he was at the stadium.

The Conner Court emphasized that the driver's friend testified that the driver did not appear to be intoxicated at the stadium and his erratic driving was attributed to his unfamiliarity of the roadways as he missed the turn to enter Interstate 95. Id., 438 Pa. Super. at 282, 652 A.2d at 374. The friend also stated that he was not concerned about the driver's ability to operate the vehicle. Id. In addition, the friend could not testify to ever seeing the driver purchase beer from the concession stand or the usherette. Id., 438 Pa. Super. at 282, 652 A.2d at 375. In fact, the friend stated that the five of them who went to the game together, alternately purchased beer based upon who wanted a beer at that particular time. Id. The Court explained there was no nexus between the beer purchases and the driver's visible intoxication as the only certain testimony provided by the friend was that the driver did not appear to be intoxicated. Id. As a result, the appellant's only proof of visible intoxication was the driver's appearance at the time of his arrest and the relation back testimony by the appellant's expert. Id., 438 Pa.

Super. at 283, 652 A.2d at 374. The appellant contended that the evidence presented was sufficient to demonstrate that the driver was visibly intoxicated when he was served alcoholic beverages pursuant to the Court's decision in Couts. The Conner Court initially noted that Couts is a plurality opinion and is not binding on the Court's decision. Id. The Court also distinguished Couts from Conner as there was a lack of erratic driving, the difference in time that elapsed between the blood alcohol testing and the accident and there was testimony from the friend that the driver consumed more beer in the vehicle after leaving the stadium. Id. Thus, the Conner Court affirmed the trial court's decision to grant summary judgment in favor of the appellees. Id.

In the case *sub judice*, Defendant Krivosh made arrangements to meet Mary Frances Venn at Shakespeare's Restaurant for drinks. Prior to leaving to travel to the restaurant, Defendant Krivosh drank two "gulps" of vodka for a total consumption of approximately eight ounces. He placed the bottle of vodka in his vehicle and then departed for Shakespeare's Restaurant. Defendant Venn arrived at the restaurant first and was later joined by Defendant Krivosh, who ordered a vodka and tonic for both of them. They began conversing and Defendant Krivosh informed Defendant Venn that he was terminating their relationship. Defendant Krivosh consumed that beverage and ordered another one. He drank half of that beverage and paid for the drinks with a $20 bill prior to leaving the restaurant. Defendant Venn left shortly thereafter and followed him into the parking lot. Defendant Krivosh and Defendant Venn entered their vehicles and Defendant Krivosh drove off followed by Defendant Venn. After traveling a short

53RD
JUDICIAL
DISTRICT

WRENCE COUNTY
PENNSYLVANIA

19

distance[5], they arrived at a traffic light and Defendant Krivosh sped away when the light turned green. Defendant Venn lost sight of his vehicle at that time. As Defendant Krivosh was driving outside of Defendant Venn's view, he crossed into the other lane of the roadway and struck the Plaintiffs' vehicle, which caused Elvin W. Jenkins to suffer severe injuries. The distance from the traffic light to the site of the accident was approximately a quarter of a mile. Defendant Venn approached the site of the accident and she parked her vehicle behind Defendant Krivosh's truck. Defendant Krivosh exited his vehicle and approached the other vehicle where he realized that Mr. Jenkins was trapped inside. Defendant Krivosh returned to his vehicle and attempted to dispose of the vodka bottle over a nearby hillside. Patrolman Disher then arrived at that scene and observed that Defendant Krivosh had glassy, bloodshot eyes, he was swaying in a circular motion and he emanated an odor of alcohol. Defendant Krivosh was attempting to keep his mouth closed in an effort to hide the odor of alcohol. Officer Disher then administered three field sobriety tests, which Defendant Krivosh failed. One of the field sobriety tests was a portable breath test, which indicated that Defendant Krivosh's blood alcohol content was .09 percent. Mr. Krivosh was transported to Ellwood City Hospital and submitted to a blood alcohol test, which revealed he had a blood alcohol content of 0.154 percent.[6] The Plaintiffs provided an expert report from Karl E. Williams, MD, MPH, who utilized methods of relation back extrapolation to determine that Defendant Krivosh would have had a blood alcohol content of 0.172 percent when he was at Shakespeare's Restaurant or the equivalent of eight or nine alcoholic beverages. He opined that is a

[5] Officer Disher testified that the drive from Shakespeare's Restaurant to the site of the accident would last approximately ten minutes depending on the traffic lights.
[6] The Defendant's blood alcohol content was provided to the Court through the Police Crash Reporting Form created by Officer Matthew Liberatore of the Ellwood City Police Department and the Affidavit of Probable Cause authored by Officer Disher relating to the Defendant's criminal charges for driving under the influence.

53RD
JUDICIAL
DISTRICT

WRENCE COUNTY
PENNSYLVANIA

20

level of intoxication at which any casual observer would notice that Defendant Krivosh was visibly intoxicated.

This case is similar to Conner as there is no direct testimony that Defendant Krivosh was visibly intoxicated while being served alcoholic beverages at Shakespeare's Restaurant.[7] Defendant Venn testified in her deposition that Defendant Krivosh did not appear to be intoxicated while at the restaurant. The two were able to engage in an in depth conversation with no signs of intoxication.[8] Moreover, the Plaintiffs did not provide any testimony from any restaurant employees or other patrons of Shakespeare's Restaurant that Defendant Krivosh appeared to be visibly intoxicated, such as having difficulty walking, slurring his words, having a significant number of drinks or the length of time Defendant Krivosh was at Shakespeare's Restaurant. Defendant Krivosh and Defendant Venn testified that he had only one and a half vodka tonics at the restaurant before paying the bill and departing, which is substantiated by his testimony that he paid with $20. Only two drinks were served to the Defendant at Shakespeare's Restaurant and there is no evidence that he was visibly intoxicated while served or at anytime inside Shakespeare's Restaurant. The Plaintiff has also failed to produce evidence that

---

[7] The Plaintiffs contend that the Court erred in failing to distinguish Conner from the current case. The Court provided a thorough analysis of the Conner case and determined that it was factually similar to the current case as a friend of the driver in Conner testified that the driver did not appear to visibly intoxicated at the stadium and the Court emphasized that the friend's testimony was the only definitive testimony concerning the driver's condition. In the current case, Defendant Venn's testimony that Defendant Krivosh did not appear to be visibly intoxicated at Shakespeare's Restaurant is the only testimony provided to this Court concerning his condition when he was served alcohol by employees of Defendant Heron's Landing. The Plaintiffs make the distinction that the driver's friend in Conner was a non-party to the suit; however, the Court does not find that Defendant Venn's status as a party invalidates her testimony that Defendant Krivosh was not visibly intoxicated because her interests in the matter are not the same as Defendant Heron's Landing and it is unlikely that her testimony in that regard was influenced by her status as a defendant.

[8] The Plaintiffs contend that the Court could have and should have disregarded Defendant Venn's and Defendant Krivosh's testimony as their interests were aligned with the interests of Defendant Heron's Landing. The Court disagrees as they may have been more willing to place blame on Defendant Heron's Landing for the accident instead of themselves. Moreover, Defendant Venn's testimony is the only evidence provided to this Court describing Defendant Krivosh's condition inside of Shakespeare's Restaurant.

Defendant Krivosh was having difficulty in Shakespeare's Restaurant or that he was visibly intoxicated in the parking lot. In addition, there is no evidence of erratic driving during the ten-minute drive prior to Defendant Krivosh's failure to navigate the bend causing the collision with the Plaintiff's vehicle. The record is also devoid of any reference that Defendant Krivosh was unable to control his vehicle other than his testimony that it seemed like his truck steering was not responding when he attempted to navigate the curve in the road. The Plaintiffs rely entirely upon the testimony of Officer Disher[9] and the affidavit of Mr. Allen, who both observed Defendant Krivosh after the accident. They both stated that Defendant Krivosh appeared to be visibly intoxicated when they observed him. It must be noted that when Defendant Krivosh was observed by Mr. Allen he had just been in a high speed collision with another vehicle, yet he still had the wherewithal to throw the vodka bottle, which was half empty, over the hill.[10] Mr. Allen also stated that he observed Defendant Krivosh operating his vehicle immediately before the accident occurred, which was after Defendant Krivosh sped up to avoid being followed by Defendant Venn. The Plaintiffs have provided the expert report of Dr. Williams to demonstrate that Defendant Krivosh's blood alcohol content would have been 0.172 percent when he was at Shakespeare's Restaurant and it would have been

---

[9] The Plaintiffs assert that the Court erred in failing to consider that Officer Disher testified it would be apparent to any reasonable person that Defendant Krivosh was intoxicated approximately ten minutes after leaving Heron's Landing. However, that testimony is not admissible at trial as Officer Disher is not permitted to speculate as to how a reasonable person would interpret Defendant Krivosh's condition nor is he permitted to render a legal conclusion as to what a reasonable person would have observed concerning Defendant Krivosh. At trial, Officer Disher would only be permitted to render his observations of Defendant Krivosh.

[10] In the Plaintiffs' Statement Of Errors Complained Of On Appeal, they assert that the Court erred in finding the fact that Defendant Krivosh was able to throw the vodka bottle over a hill just after the accident was important. This fact indicates that Defendant Krivosh was still cognizant of his environment, which is another indication of a lack of visible intoxication. This was not the sole fact relied upon by the Court and it is merely referred to as part of the Court's reasoning to be analyzed along with the other facts and evidence that the Court was presented. The Defendant seems to take offense to the wording initially used by the Court, which stated, "It is important to note…" However, the Court was not emphasizing that fact over any of the other facts that it recited in its analysis.

apparent to a casual observer that he was visibly intoxicated. According to Conner, that "relation back" testimony is insufficient to create a question of fact to permit the issue of visible intoxication to be decided by a jury. The Court will also note that the terminology utilized by 47 P.S. § 4-493(1) indicates that an establishment may not serve alcohol to any patron that is **visibly intoxicated at the time the alcoholic beverage is served**. (emphasis added). In this case, there is no evidence or testimony that Defendant Krivosh appeared visibly intoxicated while he was at Shakespeare's Restaurant. In fact, Defendant Venn testified to the opposite that Defendant Krivosh did not appear to be intoxicated and she could not smell alcohol on his breath. The Plaintiffs have not presented any evidence demonstrating that Defendant Krivosh was slurring his words at Shakespeare's Restaurant, he was unable to walk properly or he was driving erratically prior to the accident. To uphold Plaintiff's theory would unnecessarily impose liability upon any establishment serving alcoholic beverages when there has been testimony by a police officer that a driver is under the influence despite a complete void of direct evidence that the driver was visibly intoxicated when he was served alcohol at the establishment.[11]

The Plaintiffs contend that the Court failed to consider the circumstantial evidence of Defendant Heron's Landing's violations of Pennsylvania Liquor Laws in general.

---

[11] The Plaintiffs argue that the Court erred in acknowledging that the Plaintiffs were permitted to establish their case through circumstantial evidence and then proceeding to ignore the law. The Court did not ignore the law regarding the Plaintiffs' ability to prove visible intoxication through circumstantial evidence. Conversely, the Court applied the law as it is established by the existing case law that is binding upon this Court's decision. The Court considered the Plaintiffs' circumstantial relation back testimony and found that there was no indication that Defendant Krivosh was visibly intoxicated when he was served with alcohol at Shakespeare's Restaurant. In fact, any relation back evidence presented by the Plaintiffs deals with the condition of Defendant Krivosh at the time of the accident and fails to correlate with the direct evidence that was provided to the Court. After an examination of the Court's thorough analysis of this matter, it is disingenuous for the Plaintiffs to assert that the Court ignored applying the law in this matter as the Court clearly set forth the established standards for reviewing a case dealing with visible intoxication and it examined, in detail, prominent cases involving that issue.

However, circumstantial evidence of general violations of the Pennsylvania Liquor Laws do not have any relevance to the issues raised in Defendant Heron's Landing's Motion For Summary Judgment as it claimed Defendant Krivosh was not visibly intoxicated while at Shakespeare's Restaurant. Any violations of the Pennsylvania Liquor Laws by Defendant Heron's Landing that do not concern serving alcohol to Defendant Krivosh fail to establish that Defendant Krivosh was visibly intoxicated when he was at Shakespeare's Restaurant on the night of the accident.

The Plaintiffs assert that Defendant Krivosh consumed approximately 16 ounces of vodka at his residence prior to leaving for Shakespeare's Restaurant as evidenced by the half-empty vodka bottle he attempted to discard after the accident. However, there is no testimony or evidence demonstrating that Defendant Krivosh consumed more than 8 ounces of vodka prior to departing for Shakespeare's Restaurant. It is entirely plausible that Defendant Krivosh consumed vodka from that bottle at another time, either prior to the date of the accident or after he left Shakespeare's Restaurant. Additionally, the only evidence concerning the amount of vodka missing from the bottle was provided by Dr. Williams, who stated that Officer Disher provided him with a bottle of vodka that contained 203 cubic centimeters of vodka remaining from the original volume of 750 cubic centimeters. There is no testimony as to when the entirety of the missing 547 cubic centimeters was consumed. Therefore, the Court finds that the Plaintiffs have failed to present evidence creating a material fact regarding whether Defendant Krivosh was visibly intoxicated when he was served alcohol at Shakespeare's Restaurant.

53RD
JUDICIAL
DISTRICT

WRENCE COUNTY
PENNSYLVANIA

24

The Plaintiffs assert the Court erred in failing to consider circumstantial evidence of the spoliation of evidence by Defendant Heron's Landing as it relates to the destruction of the videotape and the cash receipts.

The decision to impose sanctions is within the discretion of the court and sanctions should not be imposed without some willful disregard or disobedience of an order of court or another obligation which is expressly stated. Pompa v. Hojnacki, 445 Pa. 42, 45, 281 A.2d 886, 888 (1971) (citing Rapoport v. Sirott, 418 Pa. 50, 56, 209 A.2d 421, 424 (1965)). Here, Plaintiffs seek to impose spoliation sanctions on Defendants because Defendants are no longer in possession of the surveillance videotape and the cash receipts.

Courts have adopted the spoliation doctrine which allows for an inference that evidence destroyed by one party would have been unfavorable to the position of the offending party. Mount Olivet Tabernacle v. Edwin L. Wiegand Division, Emerson Electric Co., 781 A.2d 1263, 1269 (Pa. Super. 2001) (citing Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76 (3rd Cir. Pa. 1994)). The spoliation inference has both prophylactic and punitive effects. Id. Under this rule the court may impose various sanctions, which include: "dismissal, striking out pleadings or portions thereof, prohibiting the introduction of evidence, and permitting the inference at trial that the destroyed evidence would have been harmful to plaintiff." Troup v. Tri-County Confinement Sys., 708 A.2d 825, 828 (Pa. Super. 1998) (citing Robinson v. Alston, 413 Pa. 296, 197 A.2d 40 (1964)).

The Pennsylvania Supreme Court has provided the following factors to aid the court in deciding the proper penalty for spoliation:

(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party, and (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct. Shroeder v. Commonwealth, 551 Pa. 243, 250-251.

In deciding the proper sanction for spoliation, the court should apply the least drastic sanction, such as a curative instruction that would both remedy the problem of the missing evidence, if applying any sanction at all. Sebelling by & through Sebelling v. Yamaha Motor Corp., USA, 705 A.2d 904, 907 (Pa. Super. 1998).

The Court must determine the degree of fault attributable to Defendant and in order to do this the Court must examine "two components: responsibility, and the presence or absence of bad faith." Mount Olivet Tabernacle, 781 A.2d at 1270. Also, if comparable evidence exists then the prejudice created by the spoliation of the evidence is removed. O'Donnell v. Big Yank, 696 A.2d 846, 848-849 (1997) (citing Quaile v. Carol Cable Co. Inc., 1993 U.S. Dist. Lexis 2745 (E.D. Pa. 1993); Martin v. Volkswagen of America, Inc., 1989 U.S. Dist. Lexis 8087 (E.D. Pa. 1989)); See also Amico v. Radius Communications, 2001 Phila. Ct. Com. Pl. Lexis 89 (2001).

The spoliation of papers or documents, which the party ought to produce gives rise to an unfavorable presumption as that party's conduct may be properly attributed to his knowledge that the document itself would operate against him or her during the litigation process. Ward v. Torchia, 49 Pa. D. & C. 4th 315, 321-322 (2000). The Ward Court held that spoliation applied to a real estate broker who *knowingly* withheld the identity of a person the broker wrongfully let onto the property. Id. (emphasis added).

Dale Thomson, the general manager for Shakespeare's Restaurant, testified that there were security cameras installed in the restaurant on the night of the accident. He

was able to view those videos for 15 days and then they would be recorded over. Mr. Thomson was not sure as to whether those recordings could be preserved for later viewing as he never attempted to save a recording from that system. He also testified that Shakespeare's Restaurant utilized a point of sale system called Digital Dining to record the sales of alcoholic beverages and food. However, he stated that Digital Dining did not have the capabilities of maintaining a record of what's been purchased or billed for at Shakespeare's Restaurant, but he had daily reports, which included a report for every bartender showing their total sales and how the sales were made either through cash or credit cards. There is a general report that is produced as well for the entire operation for the day and a profit report that shows where all the money came from relating to the different departments. Mr. Thomson also described a detailed credit card report that listed all of the credit cards that were processed that day. He explained that there are no records preserving a receipt for alcohol purchases that are paid in cash detailing the exact beverages that were purchased other than the receipt. That information would be shown on the server's report with a line item indicating there was a check for a certain amount and it was paid in cash. Furthermore, a detailed report from the night of the accident would not be available as it is only preserved for 18 months before it is purged from the system. Mr. Thomson stated that he did not attempt to preserve the reports demonstrating the cash receipts from the day of the accident upon receiving notice of the current lawsuit as it would be impossible to identify which transaction involved Defendant Krivosh as he paid in cash. It must be noted that Mr. Thomson attempted to research the credit card report to determine if Defendant Krivosh's name could be found on that report, which it was not as he paid in cash.

53RD
JUDICIAL
DISTRICT

WRENCE COUNTY
PENNSYLVANIA

27

Based upon those facts, the Court finds no reason to impose spoliation sanctions upon Defendant Heron's Landing at the current stage of the litigation as the records were not intentionally discarded to destroy evidence. The surveillance tape from the date of the accident was erased automatically 15 days after it was recorded and Mr. Thomson, who was in charge of those recordings, did not know of a method for preserving that recording. At the time that the surveillance video would have been erased, Defendant Heron's Landing would not have had notice that it was going to become a defendant in the current suit and it had no reason for taking extra measures to ensure that the surveillance video was preserved. Similarly, Mr. Thomson attempted to search the daily reports for Shakespeare's Restaurant for the date of the accident when he received notice that Defendant Heron's Landing was named as a defendant in the current case. However, there would not have been a detailed report of Defendant Krivosh's transaction as he paid in cash and his identity would not have been associated with a particular receipt. The Court finds that Mr. Thomson made a reasonable effort to attempt to locate records that may have stated Defendant Krivosh's drink order on the night of the accident, but was unable to identify his receipt because he paid in cash. Hence, the Court is not willing to impose spoliation sanctions or make an adverse inference from the unintentional destruction of the surveillance video and cash receipts in the current matter.

For the reasons set forth in this Opinion, the Plaintiffs' Appeal should be denied in its entirety.

53RD
JUDICIAL
DISTRICT

WRENCE COUNTY
PENNSYLVANIA

FD/ORIGINAL

2015 FEB 10 A 10: 20

28

HELEN I. MORGAN
PRO AND CLERK